May Term,
1853.

LAW
v.
SMITH.

| 4 | 56 |
|---|---|
| 130 | 132 |
| 4 | 56 |
| 136 | 657 |
| 4 | 56 |
| 139 | 30 |
| 4 | 56 |
| 141 | 448 |
| 4 | 56 |
| 146 | 539 |

LAW and Others *v.* SMITH and Others.

The return upon a *fi. fa.* that it was levied "upon the property of" the execution-defendant, without designating the kind, quantity, or value, and accompanied by no other paper or memorandum to remove the uncertainty, is void for uncertainty.

A levy is *prima facie* a satisfaction of the execution; but it may be shown to have proved to be not an actual one.

Judgments against *A.* and *B.* in the Circuit Court. The judgments having become dormant, a *scire facias* was issued on each of them, and served on *B.*, the survivor, and there was a judgment of revivor. That in the first case was as follows: "On motion, it is ordered that the judgment heretofore rendered in this case, be revived against *B.* as administrator of *A.*, and against *B.* (the former judgment having been rendered against *B.* and *A.*) and the defendant in mercy," &c. The judgment of revivor in the second case, was as follows: "The parties appeared, and, on motion, the same orders." *Held*, that the judgments of revivor, though informal, were not void.

Judgment against *A.* and *B.* *A.* having died, and the judgment having become dormant, it was revived by *scire facias* against *B.* and *A.*'s administrator, *A.*'s heirs not having been made parties. When the debt was contracted, and the proceedings upon *scire facias* had, the real estate of a decedent was subject to sale, by statute, upon a judgment against his administrator, without notice to the heirs. *Held*, that it was, therefore, only necessary to join the administrator of *A.* with *B.* to obtain a judgment on *scire facias*, on which the lands of *B.*, and those which *A.*'s heirs had inherited from him, could be sold.

A sale of real estate upon execution, without appraisement, is proper, if at the date of the contract upon which the judgment was rendered, the law did not require that lands to be sold on execution should first be appraised.

Where it does not appear that the rents and profits of land were not first offered upon a sale on execution, it will be presumed that they were first offered.

Great inadequacy of price will not vitiate a sale of land upon execution, where the inadequacy has been occasioned by the improper conduct of the execution-defendant.

A voluntary conveyance of lands made by father to son, to prevent their being subjected to the payment of his debts—whether he is indebted as principal or surety—may be set aside by his creditors, and the land may be subjected to the payment of their debts.

But the creditors will not be allowed to set aside the conveyance, until they have exhausted the other property of the grantor.

An adverse possession, to confer title, must, under the R. S. 1843, have been exclusive and continuous for twenty years, under such circumstances as show the party to have been occupying upon a claim of ownership in himself of the premises.

The possession of an execution-defendant is not adverse to the purchaser under the execution.

If a person enter upon land under a conveyance purporting to convey the legal title, and continue to occupy for a period of twenty years afterward, as owner, an adverse possession is shown.

May Term,
1853.

LAW
v.
SMITH.

ERROR to the *Pike* Circuit Court.

Monday,
May 23.

PERKINS, J.—Bill in chancery by the devisees of *George W. Ewing*, against the grantees of *Hosea Smith* and their assigns, to set aside conveyances of real estate made by said *Hosea*, as fraudulent. The title of the plaintiffs to the lands in question, rests upon sheriff's sales made under judgments against said *Hosea* and one *Benjamin Rice*, pursuant to which deeds were made to their devisor, one for a part of the premises, on the 17th day of *February*, 1825, and another for the remainder, on 'the 17th of *February*, 1826.

Answers, exhibits, and replications were filed, depositions taken, the cause heard on its merits by the Circuit Court, and the bill dismissed.

Several grounds are taken by the defendants in support of said decision.

They insist, in the first place, that the plaintiffs have no valid title to the lands in dispute, and hence, cannot sustain this bill, because the sales on execution, through which their pretended title is derived, were void.

The judgments upon which the execution-sales took place, were rendered in 1818, in suits on promissory notes, dated in 1816. On the 27th of *June fi. fas.* issued on the judgments, upon which the returns were : " Levied on the property of *Benjamin Rice* and *Hosea Smith, July* 30th, 1818, and execution and sale stayed by order of the plaintiff. *July* 23d, 1818."

Afterwards, and prior to *December*, 1818, *Rice* died, and said *Hosea Smith* was appointed his administrator.

At the *June* term, 1820, of the Circuit Court, "the said Court," the answer to the bill admits, "upon a *scire facias* issued upon each of said judgments, and served on said *Hosea Smith*, rendered a judgment of revivor." The judgments of revivor were in these words : In the first

case, "On motion, it is ordered that the judgment here-tofore rendered in this case be revived against *Hosea Smith* as administrator of *Benjamin Rice*, deceased, and against *Hosea Smith*, (the former judgment having been rendered against *Hosea Smith* and *Benjamin Rice*) and the defend-ants in mercy," &c.; in the second case, " The parties appeared, and, on motion, same orders."

On these judgments *fi. fas.* were issued, and levied upon real estate of *Smith*, " but too late to sell," and *alias fi. fas.* were issued, on which returns were made that the property levied on by the former *fi. fas.* was not sold for want of a buyer, accompanied by an appraisement amount-ing to 4,371 dollars and 66 cents. This was in 1821. A series of writs of *venditioni exponas* followed, till, upon one issued in 1823, a sale was effected of the real estate ap-praised, to *Geo. W. Ewing*, at 337 dollars and ·37 cents. In 1825, a deed was made by the sheriff pursuant to the sale, and in the same year a further sale of other lands was made under executions on said judgments, to said *Ewing*, and, in 1826, a deed was executed by the sheriff purporting to convey the lands sold at that sale, to the purchaser. Both of the deeds from the sheriff were duly recorded.

No writs of *venditioni exponas* appear to have ̇issued to compel a sale of the property taken by virtue of the first executions which were issued, in 1818, on the judgments; and it is claimed that said judgments have, therefore, from that time remained satisfied. The returns upon the executions of 1818 were, that they were levied "upon the property of *Benjamin Rice* and *Hosea Smith*," without de-signation of the kind, quantity, or value, and were accom-panied by no other paper or memorandum that removed their uncertainty; and they were, therefore, void for un-certainty (1). Further, a levy is but a *prima facie* satisfac-tion, and may be shown to have proved not an actual one. *Doe* v. *Dutton*, 2 Ind. R. 309. The subsequent proceed-ings by *scire facias*, show that the levies in this case did not prove actual satisfactions. Indeed, but a small por-tion of the judgments appears to have been ever collected.

It is also objected, that the judgments of revivor upon *scire facias* were void, and authorized no executions. They are copied above. They were informal, but, we think, not void. The record in each case, shows that the necessary party was notified, appeared, and had an opportunity to make any defence that might exist against the award of execution, and shows the judgment of the Court in the premises, that none such was shown to exist. A case was presented to the Court in which a formal judgment, instead of an order, should have been entered; and perhaps the same particularity would not be required in a judgment of revivor upon *scire facias*, that would be necessary in the original judgment.

But it is further urged, that said judgments, if good in form, could not authorize the sale of the real estate of either *Smith* or the heirs of *Rice*, because said heirs were not made ·parties, in either case, with *Smith* to the *scire facias*, and *Erwin's Lessee* v. *Dundas*, 4 How. U. S. R. 58, is cited. This position would be correct, if the law did not permit a sale of the real estate of heirs without a judgment against them. But by the law of *Indiana*, at the time the debts in question were contracted, and the proceedings upon *scire facias* had, the real estate of which a person died seized, as will appear from an inspection of the statutes, was subject to sale for his debts, upon a judgment against his administrator, and without notice to his heirs. Hence it was necessary to join only ,the administrator of a deceased joint-debtor with the survivor, to obtain a judgment, upon which the lands of the one, and of the heirs of the other, could be sold. See *Fritz* v. *Evans*, 13 S. & R. 14.

Again, it is objected that the sale of the property was without appraisement, the law, at the date of the sale, requiring one; that it does not appear that the rents and profits were first offered for sale; and that the small sum at which the sale was made, compared to the value of the property sold, was such as to vitiate the sale.

But the law at the date of the contracts did not require

an appraisement before sale of property on execution, and, hence, a sale in this case, without an appraisement, was proper; and, it not appearing that the rents and profits were not first offered, it will be presumed that they were so; and the small price for which the property sold, having resulted from the improper conduct of the execution-defendant, *Smith*, in throwing a cloud upon the title to it, as will subsequently appear in this opinion, the defendants in this case cannot make an objection on that ground.

We think the proceedings upon the executions were not void.

But prior to the rendition of the judgments on which said executions issued, *Hosea Smith*, the judgment-debtor, whose lands were sold, had conveyed the lands away to his sons; and we must inquire into the validity of those conveyances. He first executed deeds to them in *March*, 1817. They were four in number. One to his son *Henry*, then about fifteen years old, for the S. E. quarter of section 28, and for the consideration, as stated in the deed, of 500 dollars. One to *Onias*, then about twelve years old, for a part of section 33, and for the consideration, as named in the deed, of 500 dollars. One to *Warren*, then about six years old, for a part of section 33, for the consideration of 550 dollars. One to *Hosea*, Jr., then about four months old, for the N. W. quarter of section 27, and one hundred acres out of the N. E. quarter of section 28, and for the consideration of 1000 dollars. These deeds, it is said, were deeds of gift, made by the donor to his sons, in pursuance of a long indulged intention, and just upon the eve of his departure upon a long journey, from which he feared he might never return. They were not recorded, but handed to a son-in-law, who deposited them in a bureau in the donor's house, where they remained, and were never taken away by the son-in-law, to whom they were delivered. In *March*, 1818, said *Hosea*, Sen., having returned from his journey, and supposing the deeds he had previously made to be invalid, he executed another

set of deeds, in all respects like the first, and caused them to be recorded. These latter deeds were executed but a short time before the judgments first mentioned in this suit, were rendered against said *Hosea* and *Rice*, amounting to near 1,800 dollars, and of which but 411 dollars were ever made in exhausting the property of *Rice* and *Smith*, other than these lands conveyed by *Smith* to his sons. At the same time that *Smith* made the first set of deeds, in 1817, he executed to his son-in-law, *Charles Alexander*, leases for the several tracts of land described in the deeds, reserving rent payable to himself, which leases were for different terms of years, covering the minority of his sons respectively; but said *Alexander* never, in good faith, took possession of and cultivated the lands leased, as a tenant, and it was never intended that he should.

We cannot doubt that the above-mentioned conveyances must be held fraudulent as to creditors. Some effort has been made to show that *Smith* was but a surety in the debts for *Rice*, and that at the time the conveyances in question were made, it was supposed *Rice* would be fully able to pay the debts. Results, however, demonstrated the contrary, and *Smith*, who was the partner of *Rice*, must be supposed to have known more accurately than others his true situation. The most favorable view, then, for the defendants, in which this case could be looked at, would be to regard it as presenting this question: Can a man indebted in large amounts, whether as principal or surety, make a voluntary conveyance of his property, and thus defeat the collection of said debts? We think not. The claims of justice are paramount to those of affection and charity. A man thus indebted may undoubtedly make a voluntary conveyance that will be valid, as such a conveyance should not be attacked by creditors till after his other property is exhausted, and, it proving sufficient for the payment of his debts, the voluntary conveyance should stand. In this case such other property did not prove sufficient, and *Smith*, having been the administrator of *Rice*, cannot be supposed to have wasted

the effects left by him. We will remark, however, that for the decision of this case, we do not deem it necessary to go the length of the proposition we have laid down above, as the circumstances indicate that the conveyances of *Smith* to his sons, were made with the intention and purpose of preventing the lands conveyed being made subject to the payment of the debts mentioned.

Adverse possession is also set up by the defendants in bar of the plaintiff's claim of title.

The deeds made by *Smith* to his sons having been fraudulent, the property in question must be considered, so far as this case is concerned, to have been in him at the time of the sheriff's sales and conveyances. The conveyances were in 1825 and 1826. Any possession claiming to be adverse to the title of the plaintiffs must, therefore, commence at or subsequently to the former of those dates.

An adverse possession, giving title, is one that is exclusive and continuous, for, under our statutes, twenty years, under such circumstances as show the party to be occupying upon a claim of ownership, in himself, of the premises. The circumstances evidencing such a state of facts are various. If a possession is hostile in its commencement, as if one actually oust or disposses another, for example, one joint-tenant his co-tenant; or if one enter under another, and subsequently disclaim his title; or if he enter under a conveyance purporting to convey the legal title, and continue to occupy for twenty years afterwards as owner, an adverse possession will be shown.

The suit in this case was commenced in *February*, 1847. Twenty years anterior to that date would be *February*, 1827. So early as that, then, a possession adverse to *Ewing*, the purchaser at sheriff's sale, must have commenced, to have ripened into a perfect title before the commencement of this suit.

The sons severally took possession of their respective tracts, says *Charles Alexander*, " when they became of age or got married." *Ashbury Alexander* says they took possession as they became of age; and, as there is no

evidence that any of them married before they were of age, that time may be taken for the commencement, respectively, of their several possessions. Till that period they remained in the family of their father, on the farm, working with him, as usual. *Henry*, one of the sons, arrived at majority in 1823, and *Onias*, another of them, in 1826. The possession of these two had, therefore, been sufficiently long, and we think it was adverse. The deeds to them from their father were void as to creditors, but valid as against himself, and they had not, at the dates of *Ewing's* purchases, been decided to be void as to creditors. The sons undoubtedly occupied the lands, claiming to be the fee-simple owners.

The other two sons, *Warren* and *Hosea*, Jr., became of age, the former in 1832, the latter in 1838. Their possessions, therefore, though adverse, had not, at the commencement of this suit, been of sufficiently long continuance to perfect their title. Up to the times that the sons respectively took possession, the father, *Hosea*, Sen., the execution-defendant, remained in possession, and the possession of an execution-defendant is not adverse to the purchaser under the execution. The leases mentioned above, we do not regard as having any influence in the case. (2).

Lapse of time is also urged in the argument of the cause, as evidence of abandonment of all claim on the part of the plaintiffs. Had this ground been set up in the answer, even, we do not think it would have availed. *Ewing* obtained his titles in 1825 and 1826. He died in 1838. He had prosecuted an action of ejectment in his lifetime, to which *Hosea Smith*, Sen., appeared as the defendant. In 1839, a *scire facias* on the judgment in ejectment was prosecuted by the devisees, and, in 1840, a writ of possession was awarded in said suit against *Hosea*. In 1847, the plaintiffs, several of them being still infants, filed this bill. There were mistakes in the descriptions of the tracts, &c., in the proceedings at law, but those proceedings go to rebut a presumption of abandonment.

We think the Court below erred in dismissing the bill as to all of the defendants.

*Per Curiam.*—The decree is reversed with costs. Cause remanded for further proceedings in accordance with this opinion.

*S. Judah* and *I. Blackford,* for the plaintiffs.

*J. G. Jones,* for the defendants.

(1) See, as to the certainty with which the property should be described in the levy, *Throckmorton* v. *Moon,* 10 Ohio R. 42; *Brown* v. *Dickson,* 2 Humph. 395; *Huddleston* v. *Garrott,* 3 id. 629; *Pound* v. *Pullen,* 3 Yerg. 338; *Waters* v. *Duvall,* 6 Gill and Johns. 76.

(2) The R. S. 1852 enact that actions for the recovery of the possession of real estate shall be commenced within twenty years after *the cause of action* has accrued, and not afterwards, except in certain enumerated cases. R. S. 1852, p. 75, *et seq.*

The R. S. 1824, 1831, 1838, and 1843, enacted that no action of ejectment should be commenced or maintained, for the recovery of any lands or tenements, against any person or persons who might have been in the quiet and peaceable possession of the same, *under an adverse title,* for twenty years, either in his own right, or the right of any other person or persons under whom he claims. Certain exceptions are mentioned.

The second section of the act of 3 and 4 *William* 4 of *England,* is as follows : "And be it further enacted, that after the 31st day of *December, 1833,* no person shall make an entry or distress, or *bring an action to recover any land* or rent but within twenty years next after the time at which the right to make such entry or distress, or *to bring such action,* shall have first accrued to some person through whom he claims, or if such right shall not have accrued to any person through whom he claims, then within twenty years next after the time at which the right to make such entry or distress, or *to bring such action,* shall have first accrued to the person making or bringing the same."

In *Nepean* v. *Doe,* 2 Mees. and Welsby, 894, the Court say in reference to that act : "We are all clearly of opinion that the second and third sections of that act have done away with the doctrine of non-adverse possession, and except in cases falling within the fifteenth section of the act, the question is whether twenty years have elapsed *since the right accrued, whatever be the nature of the possession.*" The third section of that statute relates to the time when the right to bring the action shall be deemed to have accrued. The section will be found at large in Greenl. Cruise on Real Property, vol. 3., p. 434. And in *Culley* v. *Doe,* 11 Adol. and Ellis, 1008, the Court, after reciting the second section of the *English* statute above quoted, say : "The effect of *this* section is to put an end to all questions and discussions whether the possession of lands, &c., be adverse or not ; and if one party has been in the actual possession for twenty years, whether adversely or not, the claimant, whose original right of entry ac-

crued above twenty years before bringing the ejectment, is barred by this section." See also notes to *Nepean* v. *Doe*, 2 Smith's Lead. Cas. 464, *et seq.*

From the phraseology of the statute of 1852, and the decisions under the *English* statute above quoted, it would seem to follow that, in *Indiana*, in an action for the recovery of real estate, where the statute of limitations is pleaded, the question whether the possession has been adverse or not, is unimportant, except in certain cases to show when the right of action accrued, and, save in the enumerated cases which are exceptions to the general statute, the question is whether twenty years have elapsed since the right accrued, *whatever be the nature of the possession.*