Eve *v.* Louis *et al.*

No. 8168.

Eve *v.* Louis et al..

PLEADING.—*Demurrer.*—*Error.*—*Practice.*—A demurrer to a paragraph of answer, all the facts in which are available under another paragraph, searches the record, and should be sustained to a bad complaint; and if the complaint be bad it is error to sustain it to the paragraph of answer.

FRAUDULENT CONVEYANCE.—*Title.*—*Execution.*—*Pleading.*—When, for the purpose of defrauding his creditors, a debtor pays for lands, taking title thereto in the name of another, the lands may be sold on execution to satisfy a judgment of the creditor; but to maintain his title, or to establish it against the holder of the legal title, or those claiming under him, the purchaser upon the execution must show that, at the time of the conveyance, and at the time of sale, the debtor had not other property subject to execution sufficient to satisfy the judgment.

STATUTE OF LIMITATIONS.—*Counter-Claim.*—*Pleading.*—In pleading the statute of limitations to a counter-claim it must be shown that the bar of the statute had matured when the original suit was commenced, and it is not sufficient to aver a bar when the counter-claim was filed.

SAME.—*Quieting Title.*—*Sheriff's Sale.*—*Fraudulent Conveyance.*—A suit to quiet title by a purchaser at sheriff's sale, as against a fraudulent conveyance by the judgment debtor, is not a suit for relief against fraud in the sense of section 292, R. S. 1881, and the bar is not six years, but is fifteen years, if he be in possession; and if out of possession he could, at any time within twenty years from the time his right of possession accrued, quiet his title against any invalid adverse claim asserted at, or within fifteen years before, the commencement of suit.

From the Floyd Circuit Court.

*J. H. Stotsenburg* and *D. C. Anthony*, for appellant.

*A. Dowling, D. W. Lafollette, W. W. Tuley,* —— *Howard* and —— *Reed,* for appellees.

BLACK, C.—This action was commenced in the Clark Circuit Court. It was brought by the appellant, John G. Eve, against the appellees, Julius Louis and Heber B. Essington, upon four promissory notes, and to foreclose a mortgage on certain real estate in Clark county, given to secure said notes. The notes and mortgage were executed on the 25th of May, 1867, by the appellee Essington to one Libbeas Frisbie, who assigned them, without recourse on him, to one Tryphenia

Gresham, by whom, on the 24th of January, 1870, they were assigned to her daughter, Mary D. Gresham, who assigned them to the appellant. The appellee Louis was made a defendant, because, as stated in the complaint, he claimed to have some interest in the mortgaged property, which appellant alleged was inferior in equity and junior in time to his claim.

The subsequent proceedings, which will be noticed by us, were had in the Floyd Circuit Court, to which the venue was changed.

The appellee Essington answered by a general denial. He also filed paragraphs of special defence, to which appellant replied. These issues need not be further mentioned.

The appellee Julius Louis answered by a general denial, and filed a cross complaint. In his cross complaint he alleged that in the year 1860, and for many years before, one Robert H. Gresham, was the owner in fee simple and in the possession of the mortgaged property; that he afterward became involved in debt and embarrassed in his circumstances, and divers judgments were rendered against him by the courts of said Clark county for divers large sums of money, and divers executions were thereon issued, under and by virtue of which all his property subject to execution was levied upon, sold and conveyed by the sheriff of said county; that among his other property said real estate was, on the 31st of May, 1862, sold and conveyed, according to law, in fee simple, by said sheriff, to one Libbeas Frisbie; that at or about the time of said sheriff's sale and conveyance to said Frisbie, it was agreed and understood by and between said Frisbie and said Robert, that the latter should have the right to redeem said real estate from said sheriff's sale by paying to said Frisbie the amount of said Robert's indebtedness to him and interest thereon and all costs, and that upon such payment said Frisbie would reconvey said real estate to said Robert, or to such person or persons as he might appoint; that under and in accordance with said agreement,

said Robert, on or before the 25th of May, 1867, had fully paid said Frisbie said sum of money and all interest and costs, and was entitled to a reconveyance of said real estate by said Frisbie, as aforesaid; that on and before said last mentioned date, said Robert was indebted to the appellee Julius Louis and divers other persons in divers large sums of money, on which judgments had been rendered by the courts of said Clark county, which were then in full force, which would have at once become valid liens upon said real estate, if the same had been then conveyed to said Robert, and which he was *either utterly unable or unwilling* to pay off and satisfy; that on and before said last named day, said Essington was a partner of said Robert in the business of real estate agents, and was fully cognizant of his said agreement with said Frisbie for the reconveyance of said real estate, and also of said Robert's financial condition; that Essington was possessed of but little means, had no use for said real estate and no desire to purchase it, and, in fact, did not purchase it from said Frisbie, or from any one else; that said Robert was then very desirous of saving and securing to himself and his family said real estate from his said creditors, and, at his urgent solicitation and request, said Essington finally agreed that a deed might be made by said Frisbie and his wife, conveying said real estate to him, said Essington, for a certain specified consideration, that he would execute his notes for said consideration, to be secured by mortgage on said real estate, and that said notes should then and there be assigned to Tryphenia Gresham, wife of said Robert, and be held by her until such time as he or she could safely hold said real estate as against his said creditors, when said Essington would convey said real estate to said Gresham, or his said wife, and said Essington's notes should be surrendered to him, and his said mortgage should be satisfied; that, in accordance with this agreement, on said last named day, by the procurement and at the special instance and request

of said Robert, and of no one else, said Frisbie and his wife made a deed conveying said real estate to said Essington, and said Essington executed to said Frisbie the notes and mortgage described in the complaint, and said Frisbie assigned said notes, without recourse on him, to said Tryphenia; that when said deed was so made by said Frisbie and wife, said real estate, except as to the mere legal title thereto, was the absolute and exclusive property of said Robert, and neither said Frisbie nor his wife had any beneficial or pecuniary interest therein; that said Essington has never paid any money or other thing of value to said Frisbie, or any one else, for or on account of said real estate, or of any interest therein; that at the time of the execution by Essington of said notes and mortgage, he did not owe said Frisbie any money whatever, either for said real estate, or on any account, but they were executed without any consideration whatever therefor; that when they were endorsed by Frisbie, no money or other thing of value was paid or delivered to him, nor has there been, before or since, any such payment or delivery by said Tryphenia, or in her behalf, for or on account of said assignment of said notes, or either of them; that said deed from Frisbie and wife, and said notes and mortgage, and said assignment to said Tryphenia, were each and all parts of a single scheme of fraud, and were each and all made, or procured to be made, for the purpose of saving and securing to said Robert and his family said real estate, and with the intent to hinder, delay, or defraud said creditors of Robert; that at and before the 25th of May, 1867, and at and before the day on which the deed from said Frisbie and his wife to said Essington, and said notes and mortgage of Essington to Frisbie were executed, and at and before the time when said notes were endorsed to said Tryphenia, and at and before the endorsement of said notes by said Tryphenia to said Mary D. Gresham, daughter of said Robert, on the 24th of January, 1870, said Robert was justly indebted to the appellee

Eve *v.* Louis *et al.*

Julius Louis in a large sum of money to wit, $——; that afterward, on the —— day of December, 1872, and before said Mary endorsed said notes to the appellant, said Robert being justly indebted to said Louis in a large sum of money, to wit, $——, which indebtedness was contracted by said Robert long before said 25th day of May, 1867, and still remains wholly unpaid, said Louis was compelled to, and did, commence an action against said Robert in the court of common pleas of said Clark county, for the recovery of the amount due on said last mentioned indebtedness; that such proceedings were had in said action in said court of common pleas, that, on the 17th of January, 1873, judgments were rendered by said court in favor of said Julius Louis and against said Robert, one for $775.60, without relief from valuation or appraisement laws and costs, and one for $—— and costs.

The issuing of execution upon said judgment for $775.60, the levying thereof upon said real estate as the property of said Robert, who was then in possession thereof, as he had been for more than twenty years, and the sale thereof by the sheriff to said Julius Louis in fee simple for $4,273.72 on the 8th of March, 1873, and the execution of a deed by the sheriff to said Louis, are stated at length.

It is further alleged that at the time of the rendition of said judgment in favor of said Louis against said Robert, and at the time of the issuing of said execution and the levy thereof, and said sale and conveyance to said Louis, said notes and mortgage were still in the possession and control of said Mary, and the pretended endorsement and assignment of said notes by said Mary to the appellant had not been made; that said Tryphenia endorsed and assigned said notes to said Mary without the payment of any money or any thing of value; that after the maturity of all of said notes, said Mary pretended to endorse or assign each of them to the appellant, but said endorsements or assignments were severally made without the payment of any money or thing of value therefor by

the appellant; that said several endorsements and assignments by Tryphenia and Mary were made in furtherance of said object, for which said notes and mortgage were originally executed, to enable said Robert to save and secure said real estate to him and his family from the appellee Louis and his other creditors, and with intent to hinder, delay or defraud said creditors of said Robert.

It is further alleged, that by virtue of said sale and conveyance to appellee Louis, and of the facts aforesaid, he has acquired a good and indefeasible title to said real estate, superior in law and equity to any claim, interest, title or lien of the appellant under and by virtue of said notes and mortgage and of said endorsements or assignments of said notes, but that said mortgage is a cloud upon his said title which ought to be removed; that his title, as against said mortgage, ought to be confirmed and forever quieted. And the cross complainant demanded judgment, that said notes and mortgage be declared fraudulent and void as against him; that the apparent cloud upon his title caused by said mortgage be removed, and that his title to said real estate be confirmed and quieted as against the appellee Essington and the appellant.

The appellant demurred to the cross complaint. The demurrer was overruled, and appellant answered the cross complaint in three paragraphs. The first was a general denial. The second alleged that the pretended cause of action set out in the cross complaint did not accrue within six years next before the commencement of the action on the cross complaint.

The third paragraph averred that the pretended cause of action set out in the cross complaint did not accrue within six years before the commencement of the suit.

Demurrers filed by the appellee Louis to the second and third paragraphs of appellant's answer to the cross complaint were sustained.

The cause was tried by the court; the finding was for the appellant against the appellee Essington upon the notes, and

for the appellee Louis upon his cross complaint against the appellant and the appellee Essington. Judgment was accordingly rendered, for the appellant against Essington, for the amount found due, and in favor of Louis, quieting his title to said real estate, the mortgage being adjudged void.

The appellant has assigned as errors the overruling of his demurrer to the cross complaint, and sustaining the demurrers to the second and third paragraphs of his answer to the cross complaint.

The cross complaint was professedly pleaded "for further answer and by way of cross complaint"; and the demurrer thereto was directed against it as an answer and as a cross complaint. The ground of the demurrer was want of sufficient facts. The appellee insists that the demurrer was insufficient in form to raise the question of the sufficiency of the pleading as a cross complaint. We deem it unnecessary to take space to discuss this question or to decide it. We will assume that the position thus taken by the appellee is correct. The paragraph in question was not an answer, but it was a cross complaint, and it was so designated in the answer thereto, and was so treated by the parties and by the court in the further progress of the cause.

The first paragraph of the answer to the cross complaint was a general denial. In an action to quiet title to real estate, every defence, either legal or equitable, may be given in evidence under an answer of general denial. R. S. 1881, sections 1055, 1071; code of 1852, sections 596, 612; *Milner* v. *Hyland*, 77 Ind. 458. But a defendant in such an action may plead his defences specially. *Over* v. *Shannon*, 75 Ind. 352, and authorities therein cited. Where the complaint in such an action is sufficient, and there is an answer of general denial with a special paragraph which does not state a sufficient defence, it will be substantial error to overrule a demurrer to such special paragraph. If the special paragraph state a sufficient defence, it will be error to sustain a demurrer

thereto, but it will be a harmless error. The reason for this is that under the general denial the defendant can have, upon the trial, the full benefit of all the facts constituting his special defence. *Abdil* v. *Abdil*, 33 Ind. 460; *Wood* v. *Crane*, 75 Ind. 207; *Over* v. *Shannon, supra.*

Sustaining a demurrer to a good special paragraph, in such a case, the general denial being in, is unavailable as error for the same reason as is sustaining a demurrer to one paragraph of a pleading in any other action, where there remains in such pleading another paragraph under which the party pleading it can have the benefit of the facts alleged in the paragraph to which the demurrer has been sustained, as fully as if the demurrer had not been sustained.

The demurrer to such a special paragraph has the character and potency belonging to a demurrer in other cases. It is a harmless error to sustain it, though a sufficient defence be alleged, simply because the special defence may still be available. But there will have been, nevertheless, in such a case, a ruling upon a demurrer which searched the record; and if the complaint be bad, the reason which makes sustaining the demurrer harmless error when the complaint is good, can have no application; the special answer will necessarily be good enough for a bad complaint, and the demurrer to the answer should be sustained to the complaint, and not to the answer.

Exceptions were taken to the rulings upon the demurrers to the second and third paragraphs of the answer to the cross complaint, and these rulings have been assigned as errors. The question whether the cross complaint stated facts sufficient is therefore before us. *Wiley* v. *Howard*, 15 Ind. 169; *Menifee* v. *Clark*, 35 Ind. 304; *Lytle* v. *Lytle*, 37 Ind. 281; *Batty* v. *Fout*, 54 Ind. 482; *Fox* v. *Wray*, 56 Ind. 423; *Haymond* v. *Saucer*, 84 Ind. 3; *Hamilton* v. *Huntley*, 78 Ind. 521 (41 Am. R. 593).

It is alleged in the cross complaint that after the year 1860 all the property of the debtor subject to execution was sold

and conveyed by the sheriff, the real estate in question being thus sold and conveyed to Frisbie in 1862. The only allegation in relation to the financial ability of the debtor at any time afterward is the averment that in 1867, when he had repaid Frisbie, the debtor was *either utterly unable or unwilling* to pay off and ·satisfy divers judgments then existing against him.

It is suggested by the appellant that the pleading is bad, for failure to show a necessity for resorting to the real estate in question because of the debtor's want of .other property subject to execution sufficient to pay his debts. On the other hand, it is contended that the pleading showed that the real ·estate in controversy was held by Essington in trust for Gresham, the debtor; that it was therefore subject to sale on ·execution, and if Gresham had this real estate subject to execution, it was immaterial whether he had other property or not; and that as the mortgage was shown to have been given without consideration, as a part of a scheme of fraud, it could not be set up against the purchaser at the sheriff's sale. By way of answer to an objection which counsel seem to expect, that the conveyance to Essington was apparently absolute and unconditional, and that the trust alleged, being by parol, would not prevail against it, it is said that the rule providing that express trusts concerning land may be created only by writing does not apply to trusts created for the purpose of defrauding creditors.

After the conveyance to Essington, there was no trust for Gresham recognized as such by law. Where a debtor conveys his property to defraud his creditors, though upon a secret trust for his benefit, the conveyance is simply void as to the persons sought to be defrauded, though it is effectual as an absolute conveyance·as between the parties thereto. R. S. 1881, section 4920.

Where a conveyance for a valuable consideration is made to one person, and the consideration therefor is paid by an-

other, and the conveyance is so made with the consent of the person paying the consideration and at his instance, and not upon an agreement, without any fraudulent intent, that the land, or some interest therein, shall be held in trust for the person paying the consideration, but for the purpose of defrauding his creditors, a trust results, not in his favor, but in favor of his creditors. R., S. 1881, sections 2974, 2975, 2976.

It may be admitted that when Gresham had paid Frisbie all the purchase-money, the latter, holding the legal title without fraud, and ready to convey it to Gresham, might be regarded as holding it in trust for Gresham, who by suit might have compelled Frisbie to execute the trust by conveying the legal title. Perry Trusts, sections 121, 231.

The question whether while the legal title was held by Frisbie the property was subject to sale under execution as the property of Gresham, does not arise in this case.

When Gresham, to defraud his creditors, caused the legal title to be conveyed by Frisbie to Essington, the case became one of a conveyance for a valuable consideration made to one person, the consideration therefor being paid by another.

In this State, under the decisions of this court, it is established that whether the land be fraudulently conveyed by the debtor himself or be purchased and paid for by him, the conveyance being made to another for the purpose of defrauding the creditors of the person paying the consideration, the land may be sold on execution in favor of the defrauded creditors. *Tevis* v. *Doe*, 3 Ind. 129; *Pennington* v. *Clifton*, 11 Ind. 162; *Hubble* v. *Osborn*, 31 Ind. 249; *Hanna* v. *Aebker*, 84 Ind. 411; *Sanders* v. *Muegge*, ante, p. 214.

If the fraudulent conveyance be not attacked without a sale on execution, by a suit which formerly would have required resort to a court of equity, it may be assailed after such sale, either as at law, in an action of ejectment, or as in equity, by

a suit to quiet the title of the purchaser either in or out of possession; or, under the code, the purchaser out of possession may sue in one action for possession and to quiet his title.

When the creditor, instead of first causing the land to be sold on his execution, attacks the fraudulent conveyance and seeks to subject the land to the payment of his judgment, he must show that at the time of the execution of the conveyance, and at the time of the commencement of such suit, the debtor had not other property subject to execution sufficient to pay his debts. And no distinction is made as to this requirement between the case of a conveyance made by the debtor himself, and the case of a purchase by him and conveyance to another; cases making such requirement in relation to conveyances of the former kind are numerous in our reports. The following are cases in which such requirement was made in relation to conveyances of the latter kind: *Baugh* v. *Boles*, 35 Ind. 524; *Pence* v. *Croan*, 51 Ind. 336; *Allen* v. *Vestal*, 60 Ind. 245; *Whitesel* v. *Hiney*, 62 Ind. 168. In *Noble* v. *Hines*, 72 Ind. 12, the conveyances were of both kinds.

*Pfeifer* v. *Snyder*, 72 Ind. 78, was a suit by a judgment creditor to have a deed which was made by his judgment debtor and a mortgage made by the grantee of the latter declared void for fraud on creditors, and to subject the land to the payment of the judgment, which had been rendered after the execution of the deed and the mortgage. It was held necessary for the complaint to show that at the time at which the conveyance was executed the debtor did not have other property left subject to execution sufficient to pay his then existing debts.

In *Ewing* v. *Patterson*, 35 Ind. 326, the action was commenced by Patterson against John G. Ewing and his wife on their note and their mortgage of real estate. Anspack and others filed a cross complaint, showing the recovery of a judgment by the cross complainants against John G. Ewing, and the purchase of the real estate in question by him with

his own means, and that, to defraud his creditors, he caused the land to be conveyed to his wife, and that he and his wife, for the same fraudulent purpose, executed the mortgage in suit to Patterson, and the cross complainants asked that the conveyance to Mrs. Ewing and the mortgage to Patterson be decreed void as to said judgment plaintiffs, and that the land be sold to pay the judgment. The cross complaint was held insufficient on demurrer of the mortgagee Patterson, because it did not allege that John G. Ewing did not possess other property subject to execution for the payment of the judgment.

In *Brown* v. *Wyncoop*, 2 Blackf. 230, it was held that the question whether a conveyance of land was made to defraud creditors may be examined and decided in an action of ejectment brought by one claiming title under a sale and conveyance thereof on execution. See Bump Fraud. Convey. 529.

*Holman* v. *Elliott*, 65 Ind. 78, was an action brought by one to whom certain real estate had been sold and conveyed under an execution, to recover possession thereof from one to whom it had been conveyed by the execution defendant before the rendition of the judgment on which said execution issued. It was held necessary to the plaintiff's recovery that it should be found that the execution defendant had not other property than said real estate at the time he made the deed attacked as fraudulent, out of which the judgment could have been collected in the usual course of execution.

*Law* v. *Smith*, 4 Ind. 56, was a bill in chancery by the devisees of the purchaser of land at sheriff's sales made under judgments against the grantor of the defendants, to set aside as fraudulent the conveyances to the defendants made prior to the rendition of said judgments. The question whether the conveyances to the defendants were fraudulent was examined and decided in the affirmative. In that examination it was said that a man indebted in a large amount "may undoubtedly make a voluntary conveyance that will be valid, as such a conveyance should not be attacked by creditors till after his other property is exhausted."

Now, if there be no necessity to resort to a suit as in equity to subject the land to payment of the judgment, but it may be subjected by execution issued on the judgment, the purchaser acquires through the sale and conveyance under execution the title to the land. But the fraudulent conveyance still remains as an apparently adverse title, a cloud upon the purchaser's title. By virtue of his title he may maintain ejectment or a suit to quiet his title. In such action or suit, as an incident thereof, he must attack the fraudulent conveyance which obstructs the title therein set up and shown by him; and the burden lies on him to show the fraudulent character of the conveyance thus assailed (Brown v. Wyncoop, supra); and it is, therefore, necessary for him to show that at the time of the execution of that conveyance, and at the time of the sale on execution, the judgment debtor did not have other property subject to execution sufficient to pay his debts. The mortgage made by the fraudulent grantee could not be assailed by the purchaser on execution without his impeaching the conveyance, for he would otherwise have no sufficient interest to assail the mortgage. And if he succeeded in impeaching the conveyance as fraudulent, he would thereby invalidate the subsequent mortgage as an encumbrance on his title.

For the want of such an allegation in regard to the financial condition of the judgment debtor, we think the cross complaint was insufficient.

As the cross complaint may be amended, it is proper to examine as to the sufficiency of the second and third paragraphs of the answer thereto.

A counter-claim or a set-off (where it may be barred by the statute of limitations), if not barred at the commencement of the action in which it is pleaded, does not become so afterward during the pendency of that action. Walker v. Clements, 15 Q. B. (N. S.) 1046; Stillwell v. Bertrand, 22 Ark. 375.; Brumble v. Brown, 71 N. C. 513.

In the equity practice, the cross bill was generally considered as a defence or as a proceeding to procure a complete de-

termination of a matter already in litigation in the court. The cross bill was not an original, but was an ancillary suit, and it could be sustained only on matter growing out of the original bill, and the original and the cross cause were considered as one suit, and, ordinarily, were heard together, and the rights of all the parties in respect to the matter litigated were settled in one decree. Mitf. & T. Eq. Pl. 179; Daniell Ch. Pl. 1548, n. 1; *Id.* 1553, n. 3; Story Eq. Pl., section 400; 1 Van Santv. Eq. Pr. 223; *Kemp* v. *Mackrell,* 3 Atk. 812; *Field* v. *Schieffelin,* 7 Johns. Ch. 250.

Our code does not point out the mode of procedure for determining the rights of defendants as between themselves, and we resort to the rules of pleading and practice in courts of equity, modified by the spirit of the code (*Fletcher* v. *Holmes,* 25 Ind 458); and a defendant who desires affirmative relief against a co-defendant, touching the subject-matter of the complaint, files a cross complaint, which is an ancillary suit, or dependency on the original suit. The complaint and the cross complaint were pleadings in one suit.

Where there exists in favor of a defendant in a suit a cause of action not barred by the statute of limitations at the commencement of such suit, and, as here, of such a nature that it may be fully litigated in such suit, and ought to be set up therein and made a part thereof, he should not be obliged, while such suit is still pending, to sue upon his cause of cross action except in that suit; and if, in due course of the proceedings therein, he set up his cause of action which would have been good at the commencement of the suit, and still remains otherwise good, it ought not to be defeated by the fact that at the time of filing his pleading the period of limitation for instituting an independent action thereon has run out.

If, then, either the second or third paragraph of the answer could be applicable to the case sought to be made by the cross complaint, it would be the third paragraph only.

The case of *Law* v. *Smith, supra,* was governed by the law as it existed on the subject of adverse possession of defendants in ejectment before the enactment of the statute of limitations of 1852. It was held that any possession of the defendants that could be claimed as adverse to the title of the plaintiffs under the sheriff's conveyances, must have commenced at or subsequent to the dates of those conveyances, and that such adverse possession, to perfect the titles of defendants, must have continued twenty years before the commencement of the suit then at bar.

*Vanduyn* v. *Hepner,* 45 Ind. 589, was an action for the recovery of the possession of real estate, brought by one to whom, in 1838, it had been sold and conveyed by the sheriff under an execution on a judgment against Hepner, who theretofore had purchased and paid for the land and caused it to be conveyed to the defendants, his sons, to defraud his creditors. It was held that the question whether the conveyance to the defendants was fraudulent as to creditors of Hepner might be examined and decided in that action, and that the period of limitation for such a case is twenty years; that the limitation of six years for relief against frauds had no application. It was said: "In very many actions to recover the possession of real estate, the plaintiff's right to recover depends upon the question whether some deed, under which the defendant claims, is fraudulent and void. The statute provides, that actions 'for relief against frauds' shall be brought within six years. This provision applies to actions, the immediate and primary object of which is to be relieved from frauds, and not to actions to recover possession of real estate, though in order to avoid the defendant's defence, fraud may have to be shown. The latter class of actions can not be said to be actions for relief against frauds."

The conveyance which, in that case, was assailed as fraudulent, was made before the enactment of the provision of our statute of trusts and powers heretofore referred to, but it was

made to children of the person paying the purchase-money, and if made to defraud creditors, it would stand, as to the question whether it could be sold on execution against the father, or could only be reached in equity, on the same footing as the conveyance here in. question. See Perry Trusts, sections 143, 149; Bump Fraud. Convey. 240, 530.

We are not required here to discuss the question as to what period of limitation would be applicable were the creditor seeking relief against the fraudulent conveyance and mortgage in controversy before sale on execution.

The cross complainant, as purchaser under an execution, sought to quiet his title derived under the sheriff's sale and conveyance. His right to recover possession accrued when he received that title, and would continue for twenty years from that time. To have his title quieted, if out of possession, his right to recover possession must not be barred by time. *Dumont* v. *Dufore*, 27 Ind. 263; *Murphy* v. *Blair*, 12 Ind. 184. If in possession, he could, at any time, have his title quieted against any adverse invalid claim of title or interest asserted at the commencement of his suit to quiet title, or at any time within fifteen years before the institution of such suit. At any time for twenty years after the accruing of his right to recover possession, he, if still out of possession, had a right to have his title quieted against any adverse invalid claim of title or interest asserted at or within fifteen years before the commencement of his suit.

Relief against fraud, though necessary to the success of the cross complainant, was merely an incident of his cause of action; and if either of the paragraphs of answer, under discussion, was in proper form for the application of any period of limitation to an action to quiet title, the period of six years was not applicable. See *Milner* v. *Hyland*, *supra; Caress* v. *Foster*, 62 Ind. 145.

The judgment should be reversed.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment be reversed, at the costs of the appellees,

and the cause is remanded, with instructions to sustain to the cross complaint of the defendant Julius Louis the demurrers to the plaintiff's answer thereto.

Howk, J., having been of counsel, took no part in the decision of this cause.

Filed Nov. 24, 1883.