Wilson *et al. v.* Brookshire.

Filed Jan. 14, 1891.

No. 14,295.

WILSON ET AL. *v.* BROOKSHIRE.

:STATUTE OF LIMITATIONS.—*Action on Judgment.—Inapplicability of Statute Relating to Relief Against Fraud.*—Where the trustee of a corporation, chosen to collect subscriptions to the stock,to be applied in discharging liens upon the property, while engaged in executing the trust paid to a lien-holder the amount of his judgment and took an assignment thereof, an action by the receiver of the corporation to set aside the execution sale thereon and to cancel the sheriff's deed, is not an action for relief against fraud, within section 292, R. S. 1881, which requires such an action to be commenced within six years.

SAME.—*Satisfaction of Judgment.*—An action against the assignee of a judgment to have the judgment which has been paid declared satisfied, is not barred by the fact that more than six years have elapsed from the date of the assignment.

`FORMER ADJUDICATION.—*Action by Tenant.—Landlord not Bound.*—A suit by the tenant of a corporation to enjoin the sale on execution of the leased premises, is not a bar to a subsequent action by the corporation, where it appears that the corporation did not control the litigation in the prior suit, or occupy such a relation to the controversy, that it was bound to appear and assume control thereof.

NEW TRIAL.—*As of Right.— When will not be Granted.—Different Causes of Action.*—Where a cause proceeds to judgment which embraces a sub-.stantive cause of action, in which a new trial as a matter of right is

not allowable, then, even though it embraces other causes in which a new trial as of right is allowable, a new trial as of right will not be granted.

From the Montgomery Circuit Court.

*T. E. Ballard* and *E. E. Ballard,* for appellants.

*A. D. Thomas, J. F. Harney* and *W. W. Thornton,* for appellee.

MITCHELL, J.—Elijah V. Brookshire, as receiver of the Ladoga Seminary, brought this suit against James L. Wilson and William Hughes to procure the cancellation of a deed for certain real estate which the sheriff of Montgomery county conveyed to Hughes.

A cross-complaint was filed by the latter, and upon issues made upon the complaint and cross-complaint, there was a general judgment for the plaintiff below.

The merits of the controversy may be determined by considering the facts specially found by the court. The material facts thus found are that the Ladoga Seminary, an incorporated company, owned the real estate in controversy, and had erected thereon buildings, designed for an institution of learning. In 1876 the corporation found itself involved in debt, its real estate having become encumbered with liens to the amount of $1,200. Among other liens there was one known as the " Billingsley judgment," rendered in 1873, and amounting to $220.25, besides costs. About this time a number of citizens subscribed various sums, amounting in all to $1,725, to the capital stock of the corporation, their purpose being to free the property from encumbrance and put the buildings in suitable repair. The subscriptions were all made on the express condition that no part of the amount subscribed should be expended in making repairs except what might remain after paying off the encumbrances on the property. The defendant James L. Wilson was mutually chosen by the officers of the corporation and the subscribers to the new stock, to collect the amount subscribed, pay off

the liens, and make the contemplated repairs.   He accepted the trust, collected $1,610 of the money subscribed, which the court finds was $400 in excess of the amount required to discharge all the liens on the property.   With the exception of several small items, amounting to $238, it does not appear from the finding how the amount collected was disbursed, there being in the finding only a general statement that the residue was applied to the payment of judgments and in making repairs.   Of the $238 Wilson retained $90 for his services.

On the 10th day of February, 1877, while Wilson was engaged in executing the trust he had undertaken, he paid Billingsley $225, and took an assignment of the judgment theretofore rendered in favor of the latter against the Ladoga Seminary, to himself, and for more than six years prior to the commencement of this action openly asserted ownership of the judgment, and declared his purpose to enforce it against the property of the corporation, of which purpose its officers had notice.

It is not found whether the Billingsley judgment was paid by Wilson, with his individual funds, or out of the subscriptions which he was engaged in collecting.   Subsequently, in December, 1884, Wilson caused the property to be sold at sheriff's sale to satisfy the judgment assigned to him as above, he becoming the purchaser.   He afterwards assigned the certificate of purchase to Hughes, to whom he was indebted, the latter giving him credit for the amount on an antecedent debt, with knowledge at the time of Wilson's relation to the property and to the parties interested, and of the condition upon which the subscriptions to the stock were made.   Hughes obtained a sheriff's deed in December, 1885, and took possession of the property.

It is found that in the year 1883, when Wilson was about to sell the property on the Billingsley judgment, the Indiana Central Normal College being in possession as tenant of the Ladoga Seminary, instituted a suit in the Montgomery

Circuit Court for the purpose of enjoining the sale on the alleged ground that Wilson had collected, as the agent or trustee of the Ladoga Seminary and the subscribers to its stock more than a sufficient amount of money to pay off the Billingsley claim and all other liens on the property, and that according to the condition upon which the subscriptions were made, and owing to the relations of Wilson to the property, the judgment was, as to him, actually paid. It is found that such proceedings were had in that case that a judgment was rendered in favor of Wilson and against the Indiana Central Normal College. The Ladoga Seminary was not a party to that action, and did not participate in the trial; but it had knowledge that the suit had been instituted, and the president of the board of trustees, without any authority from the board, employed an attorney, who appeared for the purpose of looking after the interests of the seminary.

The plaintiff below was duly appointed receiver, at the suit of divers persons interested in the property of the corporation. Upon the facts, as above summarized, the court stated conclusions of law adverse to the appellants Wilson and Hughes. The facts found were all within the issues in the case, and whether the judgment shall be reversed or affirmed depends upon the propriety of the conclusions of law stated.

The conclusions stated by the court are assailed upon various grounds: 1. It is said the facts found show that the cause of action accrued more than six years before the suit was commenced, and assuming that the present is an action for relief against a fraud it is, hence, contended that the suit is barred by the statute, in which it is provided that actions for relief against frauds shall be commenced within six years, and not afterwards. Section 292, R. S. 1881. The conclusion is necessarily erroneous, because the premise from which it is drawn is incorrect. The action is not for relief against fraud, within the meaning of subdivision four of the

Wilson *et al. v.* Brookshire.

section above.   The action was not brought to rescind a contract induced by fraudulent misrepresentation or concealment, nor to set aside a conveyance on the ground that it was procured, or made, as the result of an actual agreed scheme to defraud ; nor does the plaintiff's right to maintain his action depend upon his ability to prove that any actual fraud was either committed or contemplated.   The action was brought to procure the cancellation of a sheriff's deed, and to have an encumbrance removed from certain real estate owned by the Ladoga Seminary, of which it is alleged one of the appellants is in possession.   It proceeds upon the assumption that the Billingsley judgment was actually paid and satisfied at the time the sheriff's sale was made to Wilson, owing to the fiduciary relation which the latter occupied toward the property, and those interested in it at the time he paid the money and took an assignment of the judgment.

By accepting the trust and entering upon its performance, Wilson assumed such a relation to the property in controversy that he became disqualified from acquiring any right in it hostile to those in whose behalf he was acting, without their consent.   And this was so whether he contemplated any fraud upon them or not.   Having undertaken to perform a trust which required him to collect the money subscribed for stock, and out of the first moneys collected, to pay off the encumbrances on the property, and having collected more than enough to pay off all the encumbrances, he could not, while standing in the relation of a trustee, acquire title to the trust property.   The purchase by him was voidable absolutely at the election of those interested, and in order to avoid it, nothing more was necessary than to show the relation which the purchaser occupied to the property and to the stockholders of the corporation.

The statute which provides that actions for relief against frauds shall be brought within six years, applies to actions, the immediate and primary object of which is to obtain re-

lief from fraud, and not to actions which fall within some other class, even though questions of fraud may arise incidentally. *Eve* v. *Louis*, 91 Ind. 457 ; *Caress* v. *Foster*, 62 Ind. 145 ; *Vanduyn* v. *Hepner*, 45 Ind. 589. As was, in effect, said in *Potter* v. *Smith*, 36 Ind. 231, a case closely analogous in principle, the statute which requires actions for relief against frauds to be brought within six years, embraces actual frauds, and possibly some cases of constructive frauds, but does not embrace a case like the present, where the *cestui que trust*, or person standing in his place, has the right to have the sale set aside, not because the purchaser or trustee has been guilty of fraud, but because he should be removed from all temptation to commit a fraud.

The rule that a purchase by a trustee shall enure to the benefit of the *cestui que trust*, if the latter so elects, is not intended to be remedial of actual injury, but to prevent the possibility of wrong, and it is wholly immaterial that the conduct of the former may have been innocent, and free from any imputation of fraud or wrong. He can in no case acquire a title hostile to that of the latter, while acting within the scope of his trust.

The present action was brought to set aside a sheriff's sale, and to annul the deed made by the sheriff in pursuance of the sale, not because of any actual or constructive fraud, but because, owing to the relation which the purchaser sustained to the transaction, the judgment was actually paid and satisfied before the sale was made. It was therefore not an action, the primary purpose of which was to obtain relief from an actual or constructive fraud.

We agree that trusts which arise by implication or construction of law are within the operation of the statute of limitations. *Newsom* v. *Board, etc.*, 103 Ind. 526 ; Wood Limitation of Actions, p. 413.

Our conclusion is in no wise affected by this concession, for the reason that the statute which prescribes the period within which actions for relief against frauds shall be com-

menced does not embrace cases like the one under consideration.

2. It is next insisted on the appellants' behalf, that the conclusions of law can not be maintained, because the title and ownership of the Billingsley judgment had been litigated and adjudicated in Wilson's favor in the prior injunction suit, instituted by the Indiana Central Normal College, while it was in possession of the property in controversy as the tenant of the Ladoga Seminary.

The general rule is undoubtedly that the prior judgment of a court of concurrent jurisdiction is conclusive only between those who were parties, or their privies. It is equally true, however, that courts look beyond the nominal parties, and treat all those whose interests are involved in the litigation, and who conduct and control the action or defence, as real parties, and hold them concluded by any judgment which may have been rendered. *Palmer* v. *Hayes*, 112 Ind. 289, and cases cited; *Burns* v. *Gavin*, 118 Ind. 320; *Peterson* v. *Lothrop*, 34 Pa. St. 223.

Another exception to the general rule occurs, when it is shown that a third person has such a relation to a title, or subject-matter previously adjudicated, that it was his duty, although not a party on the record, to have defended the action, upon the requisite notice thereof being given, and that he had due notice and proper opportunity to make defence. *Robbins* v. *Chicago City*, 4 Wall. 657; *Calderwood* v. *Brooks*, 28 Cal. 151; *Drennan* v. *Bunn*, 124 Ill. 175.

"Where one is bound to protect another from a liability, he is bound by the result of a litigation to which such other is a party, provided he had notice of the litigation, and opportunity to control and manage it. This is the doctrine deduced from the whole current of authorities on this subject. The qualification, however, is, that where it is sought to make the judgment an estoppel, the litigation must have been carried on without fraud or collusion, and conducted in a rea-

sonable manner." *Strong* v. *Phœnix Ins. Co.*, 62 Mo. 289 (21 Am. Rep. 417).

Before a third person not a party, or privy to an action, can be concluded by the judgment, it must appear that his title or interest was involved in the issue tried, and he must have actually conducted or controlled the action or defence, or he must have occupied such a relation to the controversy that it became his duty and that he had the right, upon receiving notice, to assume control of the litigation. One must either control the proceedings, or he must have had the right to do so, before he can be held concluded by the judgment. A third person who neither appears, nor has the right to appear and produce evidence or cross-examine witnesses, or take an appeal, in case an appeal lies, regardless of the wishes of the party on the record, can not be regarded as a party and bound by the judgment.

The facts found very clearly show that the Ladoga Seminary did not take charge of and conduct the previous injunction suit, nor did it occupy such a relation to the controversy that it was bound to appear and assume control of litigation instituted by the Indiana Central Normal College. A landlord is not bound to appear and prosecute suits instituted by his tenant, even though he may have notice of the action and that his title is brought in question. The party who contests, or is invited to contest, the title with the tenant, in an action instituted by the latter, may, in a proper case, require the landlord to be made a party, so that the latter may be concluded by the judgment, but unless the landlord is admitted as a party, upon notice, or actually assumes control of the litigation, he will not be bound.

There is authority which goes much farther, and holds that where a tenant was assisted by his landlord on a trial of trespass to try the title, yet the latter will not be bound unless a party to the record, on the ground that unless he is a party it can not appear from the recovery against the tenant that the landlord had the full opportunity for defence he

would have had if he had been made a formal party to the record.

In *Samuel* v. *Dinkins*, 12 Rich. (Law) 172, the court said: "A tenant as a privy in estate, will be concluded by the acts of his landlord prior to the lease, and by a recovery had against his landlord on grounds equivalent to such acts; but the landlord claims not under the tenant, and should not suffer for his default or weakness. When, as in this case, the tenant was assisted on the trial, by the landlord, still if the landlord was no party on the record, it can not appear from the recovery against the tenant, that the landlord had the full opportunity for defence which as a party he would have enjoyed. If it could, by extrinsic evidence, be shown that the landlord's efforts were in no way impeded, and that all the rights of offering testimony, cross-examining, and fairly presenting his title, were exercised by him, still he would not be concluded." *Chirac* v. *Reinecker*, 2 Pet. 613; *Chirac* v. *Reinecker*, 11 Wheat. 280; Wells Res Adjudicata, p. 67.

Without intending to go to the length indicated in the extract above, we unhesitatingly declare that a landlord will not be bound by the result of a suit to which he was not a party on the record, instituted by his tenant, unless it very clearly appears that the action was instigated by him, and that he conducted and controlled the litigation after it was begun.

3. It is next contended that inasmuch as the Billingsley judgment was assigned of record, and stood in the name of Wilson for more than six years, the title to the judgment thereby became absolute and unquestionable in him by force of the statute which provides that actions for the recovery of the possession of personal property shall be brought within six years. The force of this position is not apparent to us.

We concede that where one has had the peaceable, undisturbed and open possession of real or personal property, with

an assertion of his ownership, for the period, which under the law would bar an action for its recovery by the real owner, the former has acquired a good title—a title superior to that of the latter, whose neglect to avail himself of his legal rights has lost him his title. *Roots* v. *Beck,* 109 Ind. 472 ; *Campbell* v. *Holt,* 115 U. S. 620.

That principle, however, is not available in the present case, for the reason, as we have already seen, that the Billingsley judgment was paid off and extinguished when Wilson paid the money and took an assignment of the judgment to himself.

When a judgment has once been paid the six years' statute of limitations can not bar the right of the judgment defendant to have satisfaction entered. *Palmer* v. *Hayes,* 112 Ind. 289.

When a debt has actually been paid, the statute of limitations can not be appealed to as a means of reviving the debt, nor can it be employed in a court of equity to prevent the entry of satisfaction.

We agree that a judgment is personal property, and that in a controversy between persons asserting conflicting titles to a judgment, one who held the legal title under a claim of right and ownership for a period of six years, might plausibly assume the position contended for here. There is no controversy as to the title or ownership of the judgment in the present case. The question simply is, may one who has paid a judgment maintain a suit for its cancellation or to have satisfaction entered after more than six years have elapsed from the time the judgment was paid ?

4. A new trial as a matter of right was properly refused. The rule is that where a cause proceeds to judgment, which embraces a substantive cause of action, in which a new trial as a matter of right is not allowable, then even though it embraces other causes in which a new trial as of right is allowable, the policy of the law is to regard that cause of action as controlling, in which a second trial as of right is not

permitted. *Bradford* v. *School Town, etc.,* 107 Ind. 280; *Butler University* v. *Conard,* 94 Ind. 353.

Notwithstanding the cross-complaint in which one of the appellants asked to have his title quieted, there were other substantive causes of action embraced in the judgment, upon which a new trial as of right was not allowable.

There was evidence which tended to sustain the finding of the court.

Some other questions of minor importance are presented and discussed. What has preceded covers the merits of the controversy. We have examined the other questions, and without prolonging the opinion, it is sufficient to say the court committed no error of which the appellants can complain.

The judgment is affirmed, with costs.

Filed Sept. 16, 1890; petition for a rehearing overruled Jan. 13, 1891.

