MILADIN v. ISTRATE, ADMINISTRATOR OF ESTATE OF ISTRATE, DECEASED, ETC.

[No. 18,506. Filed April 29, 1954. Rehearing denied June 15, 1954. Transfer denied October 22, 1954.]

48

*Parrish & Parrish,* and *Ralph J. Miller,* all of Fort Wayne, for appellant.

*Henry Springer,* of Butler, *Hugh G. Sanders,* of Auburn, and *Edgar W. Atkinson,* and *James A. Angelone,* of counsel, both of Auburn, for appellee.

CRUMPACKER, C. J.—This is a suit originally brought by the appellee's decedent, Tudor Istrate, to foreclose a mortgage on nine and one-half acres of land near the city of Garret, DeKalb County, Indiana, occupied by the appellant in whom the legal title now rests. The complaint proceeds upon the theory that on November 10, 1936, the involved land belonged to Albert and Nova Cole and was encumbered by a mortgage in the sum of $4500 belonging to the plaintiff Tudor Istrate. That on said November 10, 1936, when the plaintiff was in his native land of Roumania, the defendant Charles Miladin, with the purpose of defrauding and cheating the plaintiff out of said mortgage, procured some person unknown to the plaintiff to forge his name to a false and unauthorized assignment thereof to the plaintiff's son, Charles Istrate. After procuring such assignment the defendant Miladin, in furtherance of his fraudulent

scheme to obtain title to said mortgaged land, induced Charles Istrate to give him power of attorney to collect the debt secured by said mortgage. This he accomplished by taking a deed from the Coles to Charles Istrate in satisfaction of said debt and mortgage which he then caused to be discharged of record by a forged marginal release. That thereafter on January 23, 1948, in further perpetration of his fraudulent scheme, the defendant caused Charles Istrate to convey said land to him. That all of this was done without the knowledge, consent or authorization of the plaintiff and that he never received any consideration therefor or anything of value in payment of his said mortgage and he therefore asks that the same be foreclosed.

The defendant Miladin answered this complaint agreeable to Rule 1-3 and by various special answers pleading the six and fifteen year statutes of limitation, laches, payment, unjust enrichment, the rights of an occupying claimant, the Trading with the Enemy Act, and finally a cross-complaint in which he seeks to quiet his title to the involved land against the plaintiff's said mortgage. Before these issues could be tried the plaintiff died and his son, Costin Istrate, as administrator of his estate, was substituted for him. Upon request the trial court found the facts specially and stated conclusions of law thereon favorable to the plaintiff, decreed the foreclosure of the mortgage in dispute and from such judgment the defendant Miladin appeals.

It appears that on January 4, 1952, the appellant procured an order of court requiring Tudor Istrate to appear before its official court reporter in the city of Auburn, Indiana on January 17, 1952, to be conditionally examined by appellant's counsel. Upon a showing that the said Tudor Istrate was in Roumania when said order was made and that it would

be impossible for him to reach the city of Auburn on January 17, 1952, the court vacated said order and the case proceeded to trial without benefit of such examination. The appellant contends that this was error as he was thereby deprived of a right which the statute clearly gives him. We cannot see how error can be predicated upon the vacation of an order with which it is impossible to comply. It might very well have been an abuse of discretion for the court to have done otherwise. The vacation of the order deprived the appellant of no right except that of taking Tudor Istrate's conditional examination in Auburn on January 17, 1952. It did not foreclose his right to such an examination at some other time or place had he asked for it, which he did not do.

The appellant next contends that the record before us reveals a case that should not have been entertained by the trial court as a matter of public policy. The only reason advanced in support of this assertion is that the appellee's decedent, Tudor Istrate, was a citizen of Roumania and died there before this case was tried. That the proceeds of the judgment herein, if affirmed, must be sent to the decedent's administrator in Roumania, a communistic country whose ideology is basically and fundamentally incompatible with ours and thereby the communistic cause will be enriched contrary to the best interests of the State of Indiana. In this appeal however we are not concerned with the distribution of the proceeds of the judgment involved. That matter rests exclusively in the jurisdiction of the DeKalb Circuit Court and should the appellee, in discharge of his trust as administrator of Tudor Istrate's estate, seek to send money into communistic Roumania it may be that the dictates of public policy will intervene.

It is next charged that the court's special findings of fact are not supported by sufficient evidence and do not warrant the conclusions of law stated thereon. It is conceded by both parties that on January 27, 1932, the plaintiff's decedent, Tudor Istrate, owned the land involved in this litigation and that on said day he sold the same to Albert and Nova Cole and took from them their note in the sum of $4,500 evidencing the unpaid purchase price and a mortgage on the land sold to secure the payment of said note. The mortgage records of DeKalb County disclose, however, that Tudor Istrate on November 10, 1936, assigned said note and mortgage to his son Charles Istrate who acknowledged payment of record on May 9, 1939. In reference to this assignment the court found as follows:

"That the purported assignment of said mortgage was made without the knowledge, consent or direction of the said Tudor Istrate, and that the signature to such assignment is not the signature of the said Tudor Istrate, nor made with any authority, knowledge or consent of the said Tudor Istrate, but that the signature of the said Tudor Istrate on said assignment of mortgage was placed thereon by some person or persons with intent to defraud the said Tudor Istrate and deprive him of the ownership of said note and mortgage."

There seems to us to be ample evidence to support this finding. Three witnesses, each of whom is familiar with Tudor Istrate's signature, testified that the signature appearing on said assignment is not his. On November 10, 1936, Tudor Istrate was in Roumania and could not have appeared before a notary public in DeKalb County on that day for the purpose of executing said assignment and the notary, who ostensibly took his acknowledgment to the document, refused to identify the signature as genuine. Charles Istrate had no correspondence with his father in reference to an

assignment of the note and mortgage and had no knowledge of the purported assignment to him until 1939, almost three years after the same was made. From these facts the court was justified in drawing the inference that had Tudor Istrate authorized anyone to make the assignment for him he would have communicated with his son Charles with whom he left said note and mortgage when he went to Roumania or any agent of his, duly authorized to assign them to Charles, would not have done so without his knowledge or consent.

The finding above quoted, being supported by evidence, compels the conclusion that the estate of Tudor Istrate still owns the note and mortgage in suit and, as the debt so evidenced fell due January 27, 1938, said mortgage constituted a valid lien on the real estate involved when this action was commenced unless paid in the meantime or barred by the statute of limitations.

The facts pertinent to the question of payment may be summarized as follows: The note and mortgage were left in the possession of Charles Istrate when his father, who owned them, went to Roumania. The note is endorsed with the signature "Tudor Istrate" which the undisputed evidence shows to be a forgery and the court so found. The records of DeKalb County show a marginal release of the mortgage involved signed by Charles Istrate, the false assignee thereof. The undisputed evidence further shows that the signature of Charles Istrate to said release was also forged and the court so found. Said note and mortgage were placed in Charles Istrate's hands for the sole purpose of collecting the money due thereon and, although Tudor Istrate then owed his son Charles $5,000, the mortgage was not given to him in payment of or to apply on said debt or to secure the same. Charles made no effort to collect the debt evidenced by said note and mortgage but in

1935 he turned them over to the appellant, his brother-in-law, together with a written power of attorney to effect collection. This the appellant accomplished, according to the testimony of Albert Cole, by "forcing" the Coles to deed the encumbered property to Charles Istrate in satisfaction of the debt evidenced by said note and mortgage.

The appellant contends that when Tudor Istrate turned said note over to his son there was a pre-existing debt owing by the father to the son which was automatically discharged, *pro tanto,* thereby constituting a valuable consideration for a transfer of ownership of said note which carried with it ownership of the mortgage security and therefore anything that happened subsequently is of no concern to the appellee. It seems to us that the fallacy of this argument lies in the fact that the court, supported by evidence, found that Tudor Istrate's endorsement on the note is a forgery and, as said note is payable to his order, the mere tradition of the instrument did not constitute a negotiation thereof whereby Charles Istrate became its owner. Sec. 19-301, Burns' 1950 Replacement. The undisputed evidence forces the conclusion that Tudor Istrate entrusted said note, unendorsed, and its mortgage security to his son Charles for the purpose of collection only. "The general rule is that in the absence of express authority or custom to the contrary, the power of an agent authorized to collect or receive payment is limited to receiving that which the law declares to be legal tender, or which is by common consent considered and treated as money and passes as such at par." Also "it is settled that an agent having authority merely to receive payment of an obligation and having no special authority from the principal to receive anything but money is not author-

ized to take chattels or merchandise in payment. The receipt of the chattels under such circumstances is not binding upon the principal and does not apply on the indebtedness if the principal does not receive the benefit of the chattels or ratify their receipt as payment." 2 Am. Jur., Agency, §§165 and 166. See also *Runyon* v. *Snell* (1888), 116 Ind. 164, 18 N. E. 522. Charles Istrate could give the appellant no greater authority than he had himself in reference to receiving payment of the note and mortgage in suit which, it is apparent, was limited to payment in money. We see no difference in principle between chattels and real estate as applied to the facts in this case and as Tudor Istrate never got the real estate that was taken in payment of his note and mortgage nor ratified such procedure, we conclude that the transaction did not constitute payment. The legal presumption of payment growing out of the lapse of time is repelled, in this case, by evidence tending to prove that the payment upon which the appellant relies was such that Tudor Istrate had the right to repudiate it when the facts became known to him. *Runyon* v. *Snell, supra.*

This brings us to consideration of appellant's contention that both the six and fifteen year statutes of limitation have run against the maintenance of this suit. The six year statute pertains to relief against fraud while the fifteen year statute concerns only those actions not limited by any other statute. Secs. 2-601 and 2-603, Burns' 1946 Replacement. Unquestionably it is the rule that the six year statute pertains in cases involving fraud when the immediate and primary object of the suit is to obtain relief from the fraud and not to actions which fall within some other class even though questions of fraud may arise incidentally. *Wilson* v. *Brookshire* (1891), 126 Ind.

497, 25 N. E. 131; *New Albany Nat. Bank* v. *Brown* (1916), 63 Ind. App. 391, 114 N. E. 486; *Eve* v. *Louis* (1883), 91 Ind. 457; *Caress* v. *Foster* (1878), 62 Ind. 145; *Vanduyn* v. *Hepner* (1874), 45 Ind. 589. It was said in the last case cited and quoted with approval in *Eve* v. *Louis, supra:* " 'In many actions to recover the possession of real estate the plaintiff's right to recover depends upon the question whether some deed, under which the defendant claims, is fraudulent and void. The statute provides that actions "for relief against frauds" shall be brought within six years. This provision applies to actions, the immediate and primary object of which is to be relieved from frauds, and not to actions to recover possession of real estate, though in order to avoid the defendant's defense, fraud may have to be shown. The latter class of actions can not be said to be actions for relief against frauds.' " This seems decisive of the question before us. Suits to foreclose mortgages are as distinctive as actions to recover possession of real estate and have a specific and primary purpose. In the present case the accomplishment of its primary purpose required an attack on an assignment which is the source of any rights the appellant may have in the land involved. Had the appellee's complaint ignored such assignment as void, *ab initio,* it would have been pleaded as a defense and fraud would then have been shown in rebuttal. The fact that such defense was anticipated by the complaint does not rob such fraud of its incidental character. The fifteen year statute has no application because suits to foreclose mortgages are held not to be barred until 20 years after the debt secured by the mortgage is due. *Yarlott* v. *Brown* (1923), 192 Ind. 648, 138 N. E. 17.

The appellant further contends that this suit is barred by the doctrine of laches because the questioned

assignment and release of mortgage were made matters of public record years before the appellee's decedent sought relief therefrom and being charged with knowledge of what such records show it was his duty to assert his rights diligently and without delay. We have been cited to no case, nor have we found any, which holds that the doctrine of laches can be predicated upon constructive knowledge. It is sufficient to start the running of the statute of limitations, 34 Am. Jur., Limitation of Actions, §170, but laches is an equity doctrine defined as the failure to act without unreasonable delay upon discovery of the thing complained of or upon discovery of facts and circumstances from which knowledge thereof will be imputed. It seems to us that discovery means something more than the knowledge with which the law charges one but which he does not actually have. Laches connotes a conscious indifference or procrastination which is wholly absent in one whose knowledge is constructive only. At any rate we do not believe that the constructive notice doctrine can be used as a shield for the protection of those who knowingly benefit by the acts of wrong-doers who place their forged documents on record well knowing that the victim of their fraud is absent from the country and can not learn and actually know that of which the law gives notice and implies knowledge.

The appellant insists however that the record is totally devoid of evidence tending to connect him with fraud or wrongdoing in any particular pertinent to the appellee's case and the court made no finding so involving him. It is true the evidence is silent as to whether the appellant actually procured the execution of the forged assignment of November 10, 1936, or the spurious marginal release of May 9, 1939. Even so

the fact remains that the court's findings, supported by evidence, conclusively show that the appellee is the owner and holder of the note and mortgage sued upon, that the same are now due and unpaid and that said mortgage is a valid and subsisting lien on the real estate involved. Under such circumstances we do not feel justified in reversing the judgment herein for the sole reason that the fraud involved is not that of the appellant unless it can be said that the appellant is an innocent purchaser of said land for value.

In this connection the court found that the appellant, who is now in possession of said real estate, does not hold the same in good faith against the appellee's mortgage. In other words, when the appellant purchased the property he was not innocent of the fraud that apparently vested title in Charles Istrate, his grantor. The evidence discloses that on November 10, 1936, when the forged assignment was executed and recorded, Tudor Istrate was in Roumania and his two sons, Charles and Costin, were in California. The only interested persons who were in DeKalb County on that date were Tudor's daughter and her husband, the appellant. There is also evidence justifying an inference that Charles Istrate, with whom his father had placed the note and mortgage for collection, left them with the appellant when he went to California about two years prior to the date of the forged assignment. At any rate it conclusively appears that the appellant was in possession of said mortgage after the date of its purported assignment and before its alleged release and, as such assignment is endorsed upon the back of the mortgage, he knew that his father-in-law was in Roumania and could not have appeared before a notary public in DeKalb County and acknowledged the same on November 10, 1936, as the notary's jurat purports. This was suf-

ficient to put him on inquiry if, in fact, he was innocent of the fraud involved and it necessarily follows that he was not a purchaser in good faith as it is obvious that a reasonable investigation would have put him in possession of the facts. In our opinion the court's finding of bad faith is supported by enough evidence to put it beyond our reach.

Assuming, as we must, that the appellant bought the land involved with the knowledge that there was a likelihood it was encumbered by a valid mortgage, we come to a consideration of his rights as an occupying claimant who has made valuable improvements thereon which the court subjected to its decree of foreclosure. The rights of an occupying claimant are purely statutory, §3-1501, et seq., Burns' 1946 Replacement, and amount to nothing more than the right to recover the value of improvements made in good faith under color of title when it has been adjudicated that the title under which the occupant claims is inferior to that of another. *Philbin* v. *Carr* (1921), 75 Ind. App. 560, 129 N. E. 19, 129 N. E. 706. The appellee, in this suit, is not asserting title to the appellant's land nor disputing the validity of the Cole deed. His only contention is that such deed and the transactions out of which it grew did not discharge his mortgage. That being the issue it is apparent the occupying claimant statute has no application.

The sixth paragraph of the appellant's answer tendered the doctrine of unjust enrichment as an issue. He says he bought the property relying upon the record title of his immediate grantor and made lasting and valuable improvements thereon in excess of $12,000 for which he is equitably entitled to be reimbursed in the event the mortgage is foreclosed. It is true the decree herein subjects any im-

.provements the appellant may have made to foreclose without restitution of their value. "The general rule is that a mortgage of real estate attaches to the land, not only in the condition in which it existed at the time of the execution of the mortgage, but as changed and improved by substitutions, accretions or labor expended on it while the mortgage is in existence." 36 Am. Jur., Mortgages, §39. The same authority adds, "it would be a hazardous doctrine to hold that a mortgagee who stands by and sees the owners thereof (the mortgaged property) care for and improve the security, does so at the peril of having his lien displaced in favor of the cost of such care and improvement." We think these principles govern this case. The appellant bought the land in controversy with knowledge of the fraud which vested record title in his grantor or at least under circumstances which charged him with such knowledge. He knew, or should have known, that the appellee's mortgage had never been lawfully assigned to his grantor and therefore his grantor's release thereof was void. Under such circumstances the improvements for which he now seeks restitution were made at his peril.

The appellant undertook to testify in his own behalf at the trial of this cause and objections to a series of questions propounded to him by his counsel were sustained on the theory that this being a suit by an administrator "involving matters which occurred during the lifetime of the decedent, where a judgment or an allowance may be made or rendered for or against the estate represented by such executor or administrator, any person who is a necessary party to the issue or record, whose interest is adverse to such estate, shall not be a competent witness as to such matters against such estate." Sec. 2-1715, Burns' 1946

Replacement. It would seem that this statute is tailored to fit the present situation but the appellant contends that it has no application "where an administrator, assails the title of another, such title having been acquired through a third party, in a transaction to which the decedent was a stranger" and that "the parties to the transaction cannot be prevented from speaking in reference to such matters even though they occurred during the lifetime of the decedent." *Taylor* v. *Duesterberg, Administrator* (1887), 109 Ind. 165, 9 N. E. 907. The appellant argues that this suit is an assault on his title which he acquired from a third party in a transaction to which plaintiff's decedent was a stranger and the court erred, under the above holding, in refusing to let him testify concerning such transaction. We, of course, are in no position to quarrel with the Taylor decision but we cannot see that it is applicable here. The appellee's case seeks to foreclose a mortgage against or notwithstanding a series of transactions alleged to be fraudulent and unauthorized and of which Charles Istrate was the immediate benefactor and Tudor Istrate the victim. Charles Istrate was the assignee named in the forged assignment and the grantee in the Cole deed taken illegally by the appellant in satisfaction of the appellee's mortgage. This indicates, rather clearly we think, that the appellant's title was not acquired from a third party as the result of transactions in which appellee's decedent was a stranger and had no interest. The appellant, by his own testimony, sought to prove these transactions were valid. The appellee's decedent, had he lived, could have testified otherwise. This being a vital issue in the case it seems just and equitable that the law closed the appellant's lips and we find no error in the court's rulings.

Finally the appellant argues that when it was shown

by the evidence that Tudor Istrate was a citizen and resident of Roumania it became the imperative duty of the trial court to dismiss this action or to stay further proceedings. That on June 5, 1942, Congress, by joint resolution, declared a state of war to exist between the United States and Roumania and thereafter our courts were closed to Tudor Istrate and have remained so ever since.

This contention is based on a long standing national policy that an alien enemy, resident in the enemy's country, cannot during the war prosecute an action in our courts. This policy has frequently been announced by our courts and is specifically recognized by the Trading with the Enemy Act. U.S. C.A. Title 50, App. §7. See Also *Rothbarth* v. *Herzfeld* (1917), 167 N. Y. S. 199, Affirmed 223 N. Y. 579, 119 N. E. 1075; *Galveston H. & S. A. Ry. Co.* v. *Blankfield* (1919), (Tex. Civ. App.) 211 S. W. 808. We are not convinced, however, that the facts of the present case bring it within the spirit and purview of this national policy. We judicially know that the state of war that now exists between this country and Roumania is a mere fiction having its source in the fact that, although the war is actually over, its legal status has not been terminated by a peace treaty. Tudor Istrate, the alleged alien enemy residing in an enemy country, died before this suit was tried. His administrator, who prosecuted the suit below, his heirs and, as far as the record discloses, his creditors are all residents and citizens of the United States and the assets of his estate, of which this judgment is one, will remain here for their benefit.

In view of the conclusions above expressed all questions on the cross-complaint are necessarily resolved against the appellant.

Judgment affirmed.

## ON PETITION FOR REHEARING.

CRUMPACKER, J.—From appellant's brief in support of his petition for a rehearing of this appeal we quote the following: "Furthermore, this court says that Charles Istrate had no knowledge of the assignment until 1939. This is not a correct statement of the record." From the condensed recital of the evidence, as the appellant prepared and placed it in his original brief, we quote the following from the direct examination of Charles Istrate: "I was not present when plaintiff's Exhibit 3, the assignment of the mortgage to me, was executed. I did not have any knowledge of this assignment until 1939 when I acquired knowledge of it from my sister, who was the wife of Charles Miladin."

Quoting further from the appellant's brief in support of his petition for a rehearing: "Thereafter, in discussing the evidence, the court suggests that Miladin 'forced' the Coles to make the deed to Charles Istrate. . . . Nowhere is there any evidence that Miladin 'forced' anything on anybody." In the cross-examination of Albert Cole we find the following: "We were forced to make the deed and we were forced to pay $800 or thereabouts." It is clear that by those words, in context, Cole meant he was forced by Miladin and his attorney to make the deed mentioned.

The remainder of appellant's petition and supporting brief is largely a restatement of arguments already made and which we considered and decided in our initial opinion. We are not convinced that we are wrong and this comment is primarily for the purpose of refuting the charge that we misstated the record in expressing our views originally.

Petition denied.

NOTE.—Reported in 119 N. E. 2d 12.

Rehearing denied 119 N. E. 2d 901.