# NEW ALBANY NATIONAL BANK ET AL. *v.* BROWN
## ET AL.

### [No. 8,773. Filed December 21, 1916.]

1. PLEDGES.—*Elements.—Possession.*—Possession of a chattel is the
essence of a pledge, and without it no privilege can exist against
third persons. p. 400.
2. PLEDGES.—*Surrender of Possession for Special Purpose.—Posses-
sion Wrongfully Obtained.—Effect.*—Possession and control of
pledged property acquired without the assent of the pledgee, or
by deception and false pretenses, will not create a forfeiture of
his lien, nor will the delivery of the pledged chattel to the
pledgor for merely a temporary, or special purpose divest the
pledgee's lien as against the pledgor or attaching creditors, al-
though it would have that effect as against bona fide purchasers
from the pledgor while in such temporary possession. p. 400.
3. INTERPLEADER.—*Cross-Complaint.—Nature of Proceedings.* — In
interpleader, the cross-complaint of a claimant asserting a first
lien on the fund is a proceeding *in rem*, and where such pleading
alleges that another claims an adverse interest in the fund it is
sufficient to require the other claimant to answer. p. 401.
4. INTERPLEADER. — *Cross-Complaint. — Demurrer.—Laches.*—In in-
terpleader, where one party claims a first lien on the fund in
controversy by a cross-complaint alleging that another is wrong-
fully asserting an adverse interest therein, the other claimant can-
not raise the question of laches by demurrer, but only by answer
showing an interest in the fund. p. 401.
5. PLEADING.—*General Denial. — Scope. — Laches.* — Under §361
Burns 1914, §356 R. S. 1881, providing that all defenses, except
the mere denial of the facts alleged by plaintiff, shall be pleaded
specially, the defense of laches is not provable under the general
denial, but must be specially pleaded. p. 402.
6. INTERPLEADER.—*Pleading. — Answer. — Sufficiency. — Interest in
Action.*—Where, in interpleader, the cross-complaint of a claimant
to the proceeds of a life insurance policy merely alleged that an-

other wrongfully asserted an adverse interest therein, the other claimant's answer, pleading the statute of limitations, but failing to show that he had interest in the fund, was insufficient. p. 402.

7. PLEDGES.—*Renewal of Notes.—Effect.*—Where notes secured by a pledge are renewed, the pledge remains as security for the new notes, in the absence of anything showing that the parties intended that the original debt should be regarded as paid. p. 402.

8. LIMITATION OF ACTIONS.—*Pledge.—Right to Foreclose Lien.*— The right to foreclose the lien of a pledge given to secure notes is not barred until the expiration of the ten-year period fixed by the statute of limitations (§295 Burns 1914, §293 R. S. 1881) in which action may be brought to recover on the notes. p. 403.

9. LIMITATION OF ACTIONS.—*Action to Foreclose Lien on Pledge.— Fraud.—Possession of Pledge.*—Where, in interpleader, a claimant to the proceeds of a policy of life insurance assigned to her as security for notes alleged that possession of the policy was obtained by the assignor through fraudulent representations, fraud was not the basis of the action, so that claimant's right to recover is not barred within six years by §294, cls. 3, 4, Burns 1914, §292 R. S. 1881. p. 403.

10. APPEAL.—*Briefs.—Sufficiency.—Questions Presented for Review.*—An assignment of error based on the overruling of a demurrer to an answer presents no question for review where appellant's brief sets out neither the complaint nor the answer, nor the substance of either, and fails to show that such answer was filed. p. 404.

11. APPEAL.—*Witnesses.—Objection to Competency.—Sufficiency.— Presumptions.*—An objection to the competency of a party as a witness presents no question for review on appeal where the party objecting failed to point out any reason for the alleged incompetency, since the presumption is that all parties to an action are competent to testify in their own behalf. p. 404.

12. APPEAL.—*Review.—Evidence.—Sufficiency.—Scope of Review.*— In determining the sufficiency of the evidence on appeal the court will not weigh the evidence, but will determine whether there is any evidence to support the finding in appellee's favor, and will consider only the evidence which tends to support such finding. p. 405.

13. INSURANCE.—*Assignment of Policy.—Right to Proceeds.—Bona Fide Purchaser.—Prior Equities.*—The assignment of a life insurance policy as collateral to secure a pre-existing debt does not make the assignee a holder for value as against prior equities. p. 407.

14. INSURANCE.—*Policy.—Surrender of Possession.—Right to Proceeds.*—Where the assignee of a life insurance policy surrendered

possession thereof to the assignor upon his representation that he desired to have a proper assignment executed and that he would then return the policy to her, the assignee did not thereby lose her lien, and a subsequent assignment by the assignor to secure a pre-existing debt was ineffectual as against such original assignee. p. 410.

15. INSURANCE.—*Policy.—Assignment.—Right to Proceeds.—Assignees.—Laches.*—An assignee who took an assignment of a life insurance policy to secure a pre-existing debt, but parted with no new consideration therefor, did not change his position in any way to his injury, and could not, in interpleader to determine the ownership of the proceeds of the policy, rely on the alleged laches of a prior assignee, who had been induced by the false representations of the assignor to return the policy to him. p. 410.

From Clark Circuit Court; *Harry C. Montgomery,* Judge.

Interpleader by the Northwestern Mutual Life Insurance Company against the New Albany National Bank, Lizzie Brown and others. From a judgment allowing Lizzie Brown and others priority in the fund involved, the New Albany National Bank and others appeal. *Affirmed.*

*Alexander Dowling,* for appellants.

*Stotsenburg & Weathers* and *George H. Voight,* for appellees.

McNUTT, J.—In 1908 the Northwestern Mutual Life Insurance Company filed its complaint in the Floyd Circuit Court against appellants and appellees, alleging that one Gebhart had previously died the owner of an insurance policy issued upon his life by said company in 1882, and that the same was payable to his estate or his assigns; that said defendants were each claiming the proceeds of said policy, and asked that it be allowed to pay said proceeds, amounting to $5,620, into court and that said defendants be required to interplead among each other to settle the ownership of said proceeds. The court made an order accordingly.

Thereafter the venue of the cause was changed to the

Clark Circuit Court, and thereupon the appellant bank filed its complaint against said other parties, alleging, in substance, that said company, on May 11, 1882, issued to said Gebhart a policy of insurance for $15,000; that the premium had not been paid thereon after 1898, and for failure to pay premiums the said policy had, by its terms, become a paid-up policy for $5,620; that said Gebhart died on March 27, 1907, intestate, and that said $5,620 had been paid by said company into court for the use of the parties entitled thereto; that on December 19, 1893, said Gebhart was indebted to it in the sum of $15,000, for borrowed money, which debt was evidenced by his promissory note for said sum, dated December 18, 1893, and on said date pledged said policy to it, which said pledge was stated in said note, which was made part of the complaint by exhibit; that at said time said Gebhart was in possession of the policy and delivered it to the bank as collateral security for the note, and that it had received the policy believing that said Gebhart had a right to pledge the same to it, and that it had ever since had the actual possession of said policy and held same as security; that, during 1894 and 1895, $2,000 were paid on the principal of said debt, and that from time to time renewal notes were given containing the same pledge agreement; that after the execution of said first note it was advised by said company that in case of an assignment of a policy, or where a policy was held as security, a duplicate assignment should be given the company, and thereupon it procured from said Gebhart a written assignment thereof, which is set out and dated December 19, 1893, and that the same was attached to said policy, which is made a part of the complaint by exhibit; that on March 1, 1907, said debt amounted to $22,354.93, and was renewed by said Gebhart, by his executing several notes aggregating said amount; that the other defendants to the company's complaint each wrongfully claim some interest in, title to, or lien upon said sum of

$5,620 so paid into court by said company; but that it denies that any of said other defendants have any interest in, title to, or claim or lien upon said fund, or any part thereof, and that the whole of the fund rightfully belongs to it by virtue of said pledge; and prays for a foreclosure thereof.

Appellees answered the bank's complaint in six paragraphs. The first was a general denial; the second, a plea of payment; the third, a plea of the three-year statute of limitations; the fourth, a plea of the ten-year statute of limitations; the fifth, a partial answer "to so much of the complaint as is founded upon the written assignment of said policy set out on page five of the complaint"; that said pretended assignment was not executed by said Gebhart on December 19, 1893, and was not delivered by said Gebhart to said bank on said December 19, 1893, but, on the contrary, said assignment was executed by said Gebhart, and was delivered by him to the bank, on February 18, 1902. This paragraph of answer was verified.

The sixth paragraph of answer was filed to so much of the complaint of the bank as is founded upon the alleged assignment to the bank of the policy of insurance, and which seeks to enforce a lien upon said policy and the proceeds thereof. This paragraph of answer alleges, in substance, that prior to January 1, 1893, said Gebhart was indebted to Elizabeth Brown in the sum of $3,500, evidenced by his promissory note; that, at the time of the execution of said note, Gebhart delivered to her the policy, mentioned in the bank's complaint, as security for its payment long before the assignment to the bank; that on March 1, 1895, Gebhart executed two notes to Elizabeth Brown for the purpose of renewing said debt; that on June 8, 1896, for the purpose of further securing these notes and perfecting his agreement, he executed a written assignment of said policy as follows:

"New Albany, Ind., June 8, 1896.
I hereby assign to Elizabeth Brown, her heirs or assigns, the life insurance policy attached as collateral for two notes covering $3,500, together, money given me in cash.                              J. F. Gebhart."

It is further alleged that the assignment, the two notes, and the policy were pinned together, and that Elizabeth Brown retained possession of the policy until July 1, 1899, when Gebhart obtained it from her by representing to her that it was not properly assigned; that he requested possession of it to have it properly assigned on the books of the company; that Elizabeth Brown delivered the policy to Gebhart for the purpose of having it properly assigned to her and for no other purpose; and that, though many times thereafter requested, he refused and neglected to redeliver said policy to her; that, on August 2, 1899, Gebhart did deliver to her another written assignment of said policy as follows:

"Assignment as Collateral Security.
In consideration of thirty-five hundred dollars, the receipt of which is hereby acknowledged, I hereby sell, assign, transfer and set over unto Elizabeth Brown of New Albany, in the State of Indiana, and her executors, administrators, and assigns, as their interest may appear, all right, title, and interest in and to policy No. 113972, issued by the Northwestern Mutual Life Insurance Company, subject to all the terms and conditions in the said policy contained. The interest of the assignee in the policy hereby assigned is limited to said assignee's valid pecuniary claim against the assignor, existing at the time of the settlement of the policy; the remainder of said policy, if any, being unaffected by this assignment.
Witness my hand and seal at New Albany, in the State of Indiana, this second day of August, 1899.
                              J. F. Gebhart."

Said answer further alleges that, after obtaining possession of the policy, he delivered it to the New Albany National Bank to secure the indebtedness mentioned in its cross-complaint; that the debt to the bank was incurred prior

to the delivery of the assignment of the policy to it; that this indebtedness was subsequent to the time of indebtedness to Elizabeth Brown; that, at the time of delivery of the assignment of the policy to the bank, it parted with no consideration for it, but that it was delivered solely for the purpose of securing the old indebtedness of Gebhart to the bank; that Elizabeth Brown died October 1, 1902, leaving the said appellees as her sole heirs; that her estate had been fully administered, including said notes, which were turned over to said heirs; that about December 1, 1904, the said notes were renewed by said Gebhart and four new ones were executed to appellees, aggregating the amount due on the old ones, two notes of $1,000 each dated September 1, 1904, and two notes of $750 each dated December 1, 1904, all payable one day after date and all bearing interest at seven per cent.; that a copy of said last assignment was filed with said company; that the assignment of said policy to said bank purporting to be dated December 19, 1893, was, in fact, executed on or about February 18, 1902, and that the assignment of the policy was made to Elizabeth Brown long before its assignment to said bank.

The appellant bank replied to appellees' answers, except the first. The replies to the second, fifth and sixth paragraphs were general denials, and the replies to the third and fourth paragraphs of answer allege that the cause of action did accrue within a period in which the action was not barred.

Appellees also filed a cross-complaint against all the other defendants in the complaint of the insurance company. It alleges the execution of the policy of the company; the payment of all premiums falling due before November 11, 1898; the failure to pay premiums thereafter and by reason thereof becoming a paid-up policy for $5,620; that before January 1, 1893, said Gebhart was indebted to Elizabeth Brown, as evidenced by his note for $3,500; that, at said

date, he delivered to her the policy of insurance referred to as security for said debt and note and that she took possession of and held the same; that on March 1, 1895, Gebhart renewed said note and debt by executing to Elizabeth Brown his two notes; that it was agreed that said Elizabeth Brown should continue to hold the policy as security for the payment of said notes; that on June 8, 1896, for the purpose of further securing said notes, Gebhart executed the first assignment heretofore set out in appellee's answer; that in order to identify the said assignment it was pinned to said policy; that Elizabeth Brown believed that Gebhart had a right to pledge said policy; that she retained it until July 1, 1899, when Gebhart notified her that it was not properly assigned and that he would have to have possession of it to have it assigned on the books of the company, and so requested her to deliver it to him for that purpose; that she thereupon delivered the policy to him and that afterwards, though often requested, he failed, neglected and refused to deliver said policy to her; that on August 2, 1899, he delivered to her a written assignment thereof (same as heretofore set out in appellees' answer.)  Said cross-complaint further alleges that Elizabeth Brown died, intestate, October 1, 1902, in Floyd county, Indiana, leaving appellees, her daughters, as her sole heirs at law; that her estate had been fully administered and that said notes were turned over to appellees, after which said Gebhart executed four new notes (the same as alleged in appellees' answer), and that said notes executed to Elizabeth Brown were surrendered to said Gebhart at the time of the execution of the new notes to appellees; and that Elizabeth Brown caused copies of the two assignments to be delivered to said company.  A copy of the insurance policy is made a part of the said cross-complaint by exhibit.  Said cross-complaint further alleges that the notes executed to appellees, with interest and attorney's fees, are due and unpaid; that said Gebhart died, intestate, March 27, 1907;

that said appellees offered to make proof of death, but the same was waived by the company; that the proceeds of the policy were paid into court; that appellees claim the first lien on the policy and that the defendants to the cross-complaint wrongfully claim interest in it adverse to them, but that the cross-complainants are entitled to the entire proceeds of the policy.

Appellant bank demurred to appellees' cross-complaint for insufficient facts which demurrer was overruled. Said appellant then filed an answer in three paragraphs. The first was a general denial, the second the six-year statute of limitations, the third the ten-year statute of limitations. Appellees demurred to said second and third paragraphs for want of sufficient facts, which demurrer was overruled as to the third and sustained as to the second. The cause was tried by the court and a finding was made for appellees, on which judgment was rendered after appellant's motion for a new trial was overruled.

Appellant bank assigns errors as follows: Overruling of the demurrer of the bank to the cross-complaint of appellees; sustaining the demurrer of appellees to the second paragraph of the answer of the bank; overruling the demurrer of the bank to the sixth paragraph of the answer of the appellees to the second paragraph of the complaint of the bank; and overruling the motion of the bank for a new trial.

The first error challenges the sufficiency of the cross-complaint of appellees. It is contended by appellant that when said Gebhart procured possession of the policy in 1899, said Elizabeth Brown thereby lost title to it, and by not taking timely steps to repossess the same, she and appellees were guilty of laches, and that appellees' claim was barred by the statute of limitations of six years at the time of the filing of the cross-complaint.

As an abstract proposition of law, possession is the essence of pledge, and, without it, no privilege can exist as against

third persons. *Casey* v. *Cavaroc* (1877), 96 U. S. 467, 490, 24 L. Ed. 779; Edwards, Bailments (2d ed.) §246; 22 Am. & Eng. Ency. Law 855; *Ex Parte Fitz* (1876), 2 Lowell (U. S.) 519; *Saint Joseph Hydraulic Co.* v. *Wilson* (1893), 133 Ind. 465, 474, 33 N. E. 113; *Geilfuss* v. *Corrigan* (1897), 95 Wis. 651, 70 N. W. 306, 37 L. R. A. 166, 60 Am. St. 143; *Moore* v. *Moore* (1887), 112 Ind. 149, 13 N. E. 673, 2 Am. St. 170. But it is well settled that the delivery by the pledgee to the pledgor for a mere temporary purpose, or a special purpose, does not, in legal contemplation, interrupt the pledgee's possession; and the fact that the policy was turned over to the pledgor for a temporary or special purpose does, not take away the possession from the pledgee any more than if the pledgee had turned the policy over to a stranger for the same purpose. "Possession and control of the pledge, without the assent of the pledgee will not create a forfeiture of the lien, nor defeat his right to recover damages for an injury to the pledge or for a conversion of it. The pledgee cannot be deemed to have released his lien when the pledge has been obtained by the pledgor through deception and false pretenses." Jones, Collateral Securities §41. "A pledgee does not lose his lien by permitting the pledgor to have possession of the property for a special and limited purpose, and not merely for his own use and benefit." Jones, Collateral Securities (3d ed.) §44. "The delivery, however, of the property by the pledgee to the pledgor for merely a temporary or special purpose, as for example for some temporary use, for the performance of some work on it, for sale, for lease for the pledgee's account, for pledge to another creditor of the pledgor, for collection, or to be exchanged for other property to be held in pledge, does not divest the pledgee's lien as against the pledgor or attaching creditors, although it would have that effect as against *bona fide* purchasers for value from the pledgor while in such temporary posses-

sion, without notice of the pledgee's right." 31 Cyc 818. See, also, 22 Am. & Eng. Ency. Law 860.

"Where the pledgor surreptitiously or fraudulently obtains possession of the property from the pledgee, such wrongful dispossession does not affect the pledge, and the lien will continue to subsist." 22 Am. & Eng. Ency. Law 862. See, also, *Goodwin* v. *Massachusetts Loan, etc., Co.* (1890), 152 Mass. 189, 25 N. E. 100.

The delivery of the policy by Mrs. Brown to Gebhart, under the circumstances shown in the complaint, was not such a surrender of the policy as would show that she intended to give up her security.

The cross-complaint of appellees was a proceeding *in rem.* It was alleged that the bank claimed some interest in, or lien upon, the proceeds of the policy. It is our opinion that the pleading was sufficient to require the bank to answer. It is contended by appellees that without some showing by the bank that it was a subsequent holder of the policy for value, it was in no position to claim that the complaint showed laches. In this contention we feel bound to concur, and, therefore, that such question could only be raised by an answer. In *Corbey* v. *Rogers* (1898), 152 Ind. 169, 52 N. E. 748, it is decided that where a complaint to foreclose a mortgage recites that a certain defendant claims some interest in the mortgaged property, but if he has any interest it is subject to plaintiff's mortgage, such defendant cannot plead the statute of limitations unless he alleges facts showing that he has an interest in the property. In *Scherer* v. *Ingerman* (1887), 110 Ind. 428, 11 N. E. 8, 12 N. E. 304, held that it is only where the laches of a party are of such a character as to work an equitable estoppel, that his right of action will be limited to a less period than that fixed by the statute of limitations.

Section 361 Burns 1914, §356 R. S. 1881, provides: "All

defenses, except the mere denial of the facts alleged by the plaintiff, shall be pleaded specially." In *Baker* v. *Kistler* (1859), 13 Ind. 63, the Supreme Court said: "The code says: 'All defenses, except the mere denial of the facts alleged by the plaintiff, shall be pleaded specially.' 2 R. S. p. 42, §66. This evidently means, facts which the plaintiff, to sustain his action, is bound to prove; and we have decided that 'every matter of fact which goes to defeat the cause of action, and which the plaintiff is not under the necessity of proving, in order to make out his case, must be alleged in the answer.'" See, also, *Adams Express Co.* v. *Darnell* (1869), 31 Ind. 20; 99 Am. Dec. 583; *National, etc., Ins. Co.* v. *Owens* (1916), *ante* 70, 113 N. E. 1024; *Storer* v. *Markley* (1904), 164 Ind. 535, 73 N. E. 1081; *Peters* v. *Griffee* (1886), 108 Ind. 121, 8 N. E. 727. From these authorities, it seems clear that the defense of laches is one which is not provable under the general denial, and which must be specially pleaded to be available as a matter of defense. It therefore follows that even if there had been laches, it would not be available to the bank in this case.

The contention of the bank that the cross-complaint of appellees shows that their claim was barred by the six-year statute of limitations is also raised by the second assignment of error, viz., that it was error to sustain the demurrer of appellees to the second paragraph of appellant bank's answer to appellees' cross-complaint. Since the cross-complaint of appellees merely alleged that appellant bank was claiming some interest in the fund, it was necessary to show in such answer that it was entitled to the benefit of the statute of limitations. This the answer does not do.

It is alleged in appellees' cross-complaint that after the death of Mrs. Brown, or in 1902, renewal notes were executed to appellees by said Gebhart, aggregating the amount due on the original note. If the original

note were secured by the policy, the renewal notes carried the pledge with them.

"When a promissory note secured by a pledge becomes due and a new note is given in renewal, the pledge remains as security for the new note, in the absence of anything showing that the parties intended that the original debt should be regarded as paid or discharged. When it appears that it will be for the benefit of the creditor that the old debt should be kept alive, the presumption of payment, by the taking of the new note for the old note, does not arise, and the original debt is not discharged." Jones, Collateral Securities (3d ed.) §355a. The limitation of the action on the notes being ten years, the right to foreclose the pledge would not sooner expire. §295 Burns 1914, §293 R. S. 1881.

The appellant bank contends that appellees' cross-complaint was one based on fraud and was for the recovery of possession of personal property, and, therefore, under clauses three and four, §294 Burns 1914, §292 R. S. 1881, the second paragraph of answer was sufficient. However, fraud was not the basis of appellees' claim; fraud is a mere incident in the cause. In such case the six-year statute of limitations does not apply. *Wilson* v. *Brookshire* (1891), 126 Ind. 497, 25 N. E. 131, 9 L. R. A. 792; *Eve* v. *Louis* (1883), 91 Ind. 457; *Caress* v. *Foster* (1878), 62 Ind. 145. We are of opinion that, as long as the notes were not barred, appellees' right to their lien, if they had one, was enforcible. §295 Burns 1914, *supra; Bottles* v. *Miller* (1887), 112 Ind. 584, 14 N. E. 728; Jones, Collateral Securities (3d ed.) §581.

In the last cited case it is held that a payment upon a note secured by a mortgage, if sufficient to take the note out of the operation of the statute of limitations, will have a like effect upon the mortgage; and, so long as any part of the debt remains unpaid and not barred, the lien of the mortgage continues unimpaired. It is our opinion,

therefore, that the court did not err in overruling the demurrer to the cross-complaint of appellees or in sustaining their demurrer to appellant bank's second paragraph of answer.

Appellant bank's brief wholly fails to show that appellees filed a sixth paragraph, or any other answer, to its second paragraph of cross-complaint or interpleader. Such second paragraph of cross-complaint or interpleader is not set out in said brief, nor is such answer, or the substance of it, set out, and no demurrer to any such answer is mentioned, except in the assignment of errors, and the point is made that it should have been sustained. No question is, therefore, presented on the third assignment of error.

10.

The questions presented by the motion for a new trial are that the judgment of the court is not sustained by sufficient evidence; that it is contrary to law; and that the court erred in permitting appellee Lizzie H. Brown to testify as a witness on behalf of appellees.

After said witness had testified to some preliminaries the bill of exceptions discloses the following: "Q. Prior to your father's death, was Gebhart indebted to your father in any amount? The plaintiff, through its attorney objects for the reason that the witness is not competent to testify to any indebtedness on the part of John F. Gebhart, which objection is by the court overruled, to which ruling of the court, the plaintiff, at the time, excepts." The presumption is that all parties to an action are competent to testify in their own behalf, and where it is sought to exclude a party it is incumbent upon the party objecting to point out to the trial court the reason or reasons why such party is incompetent to testify. No reason whatever was given by appellant bank, upon the occasion now complained of, why the witness was incompetent, and no question can be raised by the objection in this court. Elliott, Work of the Advocate 222, and cases

11.

there cited. We might say in this connection that no reason is now given by appellant bank why said witness was not competent to answer the question objected to. The question in no way referred to the insurance policy, the proceeds of which were in controversy. The court found that appellees' claim should be paid in full, and the remainder of the proceeds of the insurance policy be paid to the appellant bank.

On appeal this court will not weigh the evidence, but will determine whether there is any evidence to support the finding in appellees' favor, and will consider only 12. the evidence which tends to support such finding. *Pittsburgh, etc., R. Co.* v. *Nicholas* (1905), 165 Ind. 679, 76 N. E. 522; *Union Traction Co.* v. *Buckland,* (1904), 34 Ind. App. 420, 72 N. E. 158; *Diamond Block Coal Co.* v. *Cuthbertson* (1905), 166 Ind. 290, 76 N. E. 1060; *Knoefel* v. *Atkins* (1907), 40 Ind. App. 428, 81 N. E. 600. This evidence shows that about 1883 said Gebhart borrowed of appellees' father the sum of $3,500, for which he gave him a note, and also his insurance policy in the Northwestern Mutual Life Insurance Company for $15,000 as collateral security; that their father gave the note and policy to their mother in 1892; that their father died in 1894, and soon afterwards said policy was placed in the Louisville Trust Company and an assignment of the policy was made on a slip of paper and pinned to the policy; some time about 1897 or 1898 Gebhart came to appellees' mother and informed her, in substance, that the assignment which he had theretofore made to her was not good or proper in form and said if she would let him have the policy he would have a proper assignment made and return both to her; about one month later he brought her another assignment of the policy which was sent to the company, but never did return the policy; this assignment was on the company's blank and identified the policy by number and the debt by amount; it is admitted by the bank that

it did not procure a written assignment of the policy until after the second written assignment was delivered to Mrs. Brown, and it is also admitted that this written assignment was dated back to December 19, 1893, and before making an effort to get such written assignment it had information from the company that Mrs. Brown had a written assignment of the policy as collateral; but on the other hand it is shown that appellees did not have any knowledge that the bank had an assignment of the policy until after the death of Gebhart in 1907. A letter from the company was put in evidence showing that the policy was assigned to Elizabeth Brown, mother of appellees, on August 2, 1899, by duplicate received and recorded by the company August 23, 1899, and was assigned to the bank, dated December 19, 1893, and not recorded by the company until February 2, 1902. The evidence further shows, by the testimony of Lizzie H. Brown, that she had not seen the policy from the time Gebhart obtained possession of it from her at the Louisville Trust Company until she was on the witness stand, when the policy was handed to her and she found the place where the assignment given her mother in 1896 had been pinned to it, and the pin holes in the policy corresponded with the pin holes in the assignment. The evidence further shows that after Mrs. Brown died her estate was fully settled and the Gebhart debt was turned over to her daughters as the only heirs, and that afterwards Gebhart executed four notes to appellees aggregating the amount of the debt. There was evidence to show that appellees' father and mother had the policy as collateral long before the bank claims to have received it in 1893. And there is evidence from which the trial court could find that the bank never had possession of the policy until about the time the assignment to it was received by the company in February, 1902, and that when it did get possession of the policy it had knowledge that Mrs. Brown had an assignment of it on the books of the company.

But without such knowledge on the part of the bank when it procured the policy as collateral, it is contended by appellees that inasmuch as no new debt was created at the time the bank procured the policy, it was not a *bona fide* purchaser so as to cut off the prior equities of the Browns. The evidence shows that, prior to the time the bank claims to have procured the policy in 1893, Gebhart was indebted to it in the sum of $15,000, and that a note for this sum was executed to it by Gebhart dated December 18, 1893; that, during 1894 and 1895, $2,000 were paid on the principal of the note by Gebhart; that about this time or a little later, but before 1899, the bank let Gebhart have the money to pay two or three semi-annual payments of premiums, amounting to much less than $2,000, and that it quit loaning Gebhart any more money with which to pay premiums because it was figured that if Gebhart lived as long as some of his ancestors, more would be paid out in premiums and interest than the policy would be worth at Gebhart's death. It is also shown that interest accumulated on the bank paper executed by Gebhart and renewal notes were executed by Gebhart from time to time, the last renewal being only about one month before his death in 1907.

It will be seen, therefore, that whether the bank procured the policy in 1893 or in 1902 as collateral, it was to secure an existing debt. As between Gebhart and the bank there can be no question but that a precedent debt would constitute a valuable consideration for the assignment of the policy. An assignment, however, as security for a precedent debt does not make such an assignee a holder for value as against prior equities. In the late work of Jones on Pledges and Collateral Securities, §360a, the author says: ''A pre-existing debt is not a sufficient consideration to constitute a pledgee a holder for value.'' In support of the text he cites *Goodwin* v. *Massachusetts Loan, etc., Co., supra; Loeb & Bro.* v. *Peters & Bro.* (1879), 63

Ala. 243, 35 Am. Rep. 17; *Sleeper* v. *Davis* (1886), 64 N. H. 59, 6 Atl. 201, 10 Am. St. 377; *Linnard's Appeal* (1886), (Pa.) 3 Atl. 840; *Merchants' Ins. Co.* v. *Abbott* (1881), 131 Mass. 397; *Lesassier & Wise* v. *Southwestern* (1874), 2 Woods 35; *Currie* v. *Misa* (1875), L. R. 10 Ex. 153; *Leask* v. *Scott* (1877), L. R. 2 Q. B. D. 376; *Rodger* v. *Comptoir d'Escumpte de Paris* (1869), L. R. 2 P. C. 393; *Chartered Bank, etc.* v. *Henderson* (1874), L. R. 5 P. C. 501.

In Indiana, the rule has long since been established that a precedent debt does not constitute one a holder or purchaser for value. "The fact, conceding it to be the fact, that the notes were assigned to appellee in payment of a precedent debt, does not show that there was no valid consideration for the assignment. A precedent debt is unquestionably a valuable consideration for a contract, but is not such a consideration as will make a grantee or assignee a *bona fide* purchaser against prior equities. *Hewitt* v. *Powers*, 84 Ind. 295; *Louthain* v. *Miller*, 85 Ind. 161; *Fitzpatrick* v. *Papa*, 89 Ind. 17. As against one who has no prior equity, a precedent debt will support a contract otherwise valid." *Boling* v. *Howell* (1884), 93 Ind. 329, 331.

"As to mortgages of land taken to secure a precedent debt it is well settled in Indiana, that, although a precedent debt is a valuable consideration for a mortgage given to secure it, yet it will not make the mortgagee a *bona fide* purchaser, as against prior equities of which he had no notice. That such a mortgage is founded upon a valuable consideration was decided in *Work* v. *Brayton*, 5 Ind. 396; *Wright* v. *Bundy*, 11 Ind. 398, and *Babcock* v. *Jordan*, 24 Ind. 14, and upon this point these cases have been repeatedly followed; but so far as these cases asserted that the holder of such a security was entitled to protection against secret equities they have been virtually overruled by *Busenbarke* v. *Ramey*, 53 Ind. 499; *Gilchrist* v. *Gough*,

63 Ind. 576; *Davis* v. *Newcomb,* 72 Ind. 413; *Hewitt* v. *Powers,* 84 Ind. 295; *Louthain* v. *Miller,* 85 Ind. 161; *Boling* v. *Howell, ante,* page 329. The doctrine of these later cases is that an antecedent debt is a valuable consideration and will support a mortgage, but is not such a consideration as will make the mortgagee a *bona fide* purchaser, so as to cut off prior secret equities. This doctrine is supported by abundant authority elsewhere. See the cases cited in *Busenbarke* v. *Ramey, supra,* and *Gilchrist* v. *Gough, supra.''* *Wert* v. *Naylor* (1884), 93 Ind. 431, 433.

"In Hare & W. Lead. Cas., vol. 2, page 104, 3 Am. ed., it is said, that 'it is equally well settled, * * * that, although a sale, vitiated by fraud, cannot be set aside in the hands of a *bona fide* purchaser, from the fraudulent vendee; yet, that no one can claim the benefit of this doctrine, who has not parted with value, or who has taken the goods as security for an antecedent debt; *Buffington* v. *Gerrish,* 15 Mass. 156; *Hodgeden* v. *Hubbard,* 18 Vt. 504; *Poor* v. *Woodburn,* 25 Vt. 234; *Clark* v. *Flint,* 22 Pick. 231. In *Upshaw* v. *Hargrove, Adm'r,* 6 Sm. & M. 286, *Boone, Adm'r,* v. *Barnes,* 23 Miss. 136, and *Halstead* v. *The President, etc., of the Bank of Kentucky,* 4 J. J. Mar. 554, the same rule was applied to the conveyance of land by a debtor to a creditor, which was said not to render the latter a purchaser for value, unless something was given up or relinquished on the faith of the conveyance, or the transfer accepted in absolute payment or satisfaction for the debt!'' *Busenbarke, Executor,* v. *Ramey* (1876), 53 Ind. 499, 502.

"It is insisted, that, as the mortgage was executed to secure a pre-existing debt which Heffner owed the appellee, it is not supported by a sufficient consideration, and we are referred to *Busenbarke* v. *Ramey,* 53 Ind. 499; *Gilchrist* v. *Gough,* 63 Ind. 576; *Davis* v. *Newcomb,* 72 Indiana 413. We do not regard the cases as declaring the doctrine for which appellants contend. We understand

them to hold that a pre-existing debt is not such a consideration as will make a purchaser a *bona fide* one in such a sense as to cut off prior equities; but we do not understand them to hold that an antecedent debt may not constitute a valuable consideration." *Louthain* v. *Miller* (1882), *supra*, 161, 163.

It is very evident under the authorities cited that the bank is not a holder for value. The question then arises, Did the Browns lose their security by reason of the 14. delivery of the policy to Gebhart under the circumstances of such delivery? The evidence clearly shows that Gebhart came to Mrs. Brown and told her the assignment of the policy, in the shape it was, would do her no good; that it must be assigned on a blank of the company and on their books; that he would take it and have it properly assigned and return it to her. Upon this promise and for this purpose she let him have possession of the property. If Gebhart had pledged the policy to the bank for cash, without any notice of prior equities by the bank, instead of a debt already in existence, it is probable that it would be entitled to the proceeds as against appellees, but, as shown by the authorities cited under a discussion of the first assignment of error, a pledgee does not lose his lien by permitting the pledgor to have possession of the property for a special and limited purpose, and not merely for his own use and benefit, unless it is subsequently pledged for value, without notice.

The evidence does not show any laches on the part of the Browns which in any way injured the bank. The evidence shows that the bank was not a holder for value. 15. It gave up nothing on the strength of the policy, and the Browns knew nothing of the claim of the bank until after Gebhart's death. Laches implies something more than mere lapse of time; it requires some actual or presumable change of circumstances rendering it inequitable to grant relief. The Supreme Court of the United

States in *O'Brien* v. *Wheelock* (1901), 184 U. S. 450, 22
Sup. Ct. 354, 46 L. Ed. 636, thus states the rule: "The
doctrine of courts of equity to withhold relief from those
who have delayed the assertion of their claims for an
unreasonable length of time is thoroughly settled. Its
application depends on the circumstances of the particular
case. It is not a mere matter of lapse of time, but of
change of situation during neglectful repose, rendering it
inequitable to afford relief."

The rule governing the defense of laches is thus stated
in *Galliher* v. *Cadwell* (1891), 145 U. S. 368, 12 Sup. Ct.
873, 36 L. Ed. 738: "The cases are many in which this
defense has been invoked and considered. It is true, that
by reason of their differences of fact no one case becomes
an exact precedent for another, yet a uniform principle
pervades them all. They proceed on the assumption that
the party to whom laches is imputed has knowledge of his
rights, and an ample opportunity to establish them in the
proper forum; that by reason of his delay the adverse
party has good reason to believe that the alleged rights are
worthless, or have been abandoned; and that because of the
change in condition or relations during this period of delay,
it would be an injustice to the latter to permit him to now
assert them.  *  *  *  They all proceed upon the theory
that laches is not like limitation, a mere matter of time;
but principally a question of the inequity of permitting
the claim to be enforced—an inequity founded upon some
change in the condition or relations of the property or the
parties." In *Townsend* v. *Vanderwerker* (1895), 160 U.
S. 171, 16 Sup. Ct. 258, 40 L. Ed. 383, it is said: "The
question of laches does not depend, as does the statute of
limitations, upon the fact that a certain definite time has
elapsed since the cause of action accrued, but whether,
under all the circumstances of the particular case, plain-
tiff is chargeable with a want of due diligence in failing
to institute proceedings before he did."

The bank has never changed its position on account of the conduct of the Browns. It parted with nothing when it took the policy from Gebhart. It has parted with nothing since. Before a right of action can be barred by a less period than the statute of limitations, the laches must have been of such a character as to work an equitable estoppel. "There may be cases of statutory proceedings, or cases of purely equitable cognizance where the laches of a party may be of such a character, and under such circumstances, as will bar his right to prosecute his action, in less time than that fixed by the statute of limitations. But that is only in cases where the laches are of such a character and under such circumstances as to work an equitable estoppel. *State, ex rel.,* v. *Gordon,* 87 Ind. 171; *City of Logansport* v. *Uhl,* 99 Ind. 531, 50 Am. R. 109; *Earle* v. *Earle,* 91 Ind. 27." *Scherer* v. *Ingerman* (1887), 110 Ind. 428, 433, 11 N. E. 8, 12 N. E. 304.

We have heretofore shown that the claim of appellees was not barred by the statute of limitations. There was some evidence to support the finding of the court, and such finding is not contrary to law. The judgment is affirmed.

NOTE.—Reported in 114 N. E. 486. Pledges: (a) validity of, without delivery as against pledgor or person claiming through him, 11 Ann. Cas. 793; (b) recourse against pledge after bar of principal obligation, 2 Ann. Cas. 271, 14 Ann. Cas. 847. Collaterals, title acquired by holder, 32 Am. St. 711. See under (1, 2, 14) 31 Cyc 800, 818, 819; (8) 25 Cyc 1000; (13) 25 Cyc 777.