FLETCHER AMERICAN NATIONAL BANK *v.* FEDERAL SECURITIES COMPANY.

[No. 13,407. Filed November 14, 1929. Rehearing denied February 20, 1930. Transfer denied May 12, 1932.]

*Matson, Carter, Ross & McCord, Adolph Schreiber, Austin V. Clifford, Edward B. Raub, Jr.,* and *Harry T. Ice,* for appellant.

*Bingham & Bingham,* for appellee.

NICHOLS, J.—Action by appellee against appellant in two paragraphs of complaint. The first paragraph avers appellee to be the equitable owner of certain funds deposited with appellant bank by the Majestic Tire & Rubber Company, which funds had been set off by appellant against the indebtedness of the Majestic Company to appellant, and seeks to recover the funds from appellant in a sum sufficient to pay a note of the Majestic Company to appellee. The second paragraph avers the same facts as in the first, but seeks a recovery for money had and received. To each of these paragraphs, appellant filed a demurrer for want of facts sufficient to constitute a cause of action, which was overruled. Appellant then filed six paragraphs of answer, the first, second and fifth of which were addressed to the amended first paragraph of complaint, and the third, fourth and sixth to the second paragraph. To the second, fourth, fifth and sixth paragraphs of answer, appellee filed a reply in three paragraphs, denial and two affirmative paragraphs.

The first and third paragraphs of answer were in general denial to the respective paragraphs of complaint. A trial on the merits resulted in a finding in favor of appellee, on which the court rendered judgment against appellant for $2,661.37. Appellant's motion for a new trial was overruled and this appeal followed. Appellant relies for reversal on the alleged error of the court in overruling appellant's demurrers to the respective paragraphs of complaint, and in overruling appellant's motion for a new trial.

The facts of this case, so far as here involved, as they

appear by the evidence, are, in substance, as follows: The Majestic Company was a corporation engaged in the manufacture and sale of automobile tires. It had a general commercial account in appellant bank and deposited in this account the payments made to it for tires. It also borrowed heavily from appellant upon collateral notes, giving its first mortgage bonds as collateral upon some notes, and pledging tires as collateral upon others. All notes are similar as to general provisions, and the note upon which the credit here involved was made may be taken as typical of them. This note, for $9,200, is in the common form of such instruments, with the added provision that, to secure its payment, the Majestic Company "has transferred, pledged and delivered to the Fletcher American National Bank, Indianapolis, Indiana, the following property, to-wit: (Auto Cord Tires described), the market value of which is today $......) and now agrees that upon breach of any of the promises herein contained or upon failure to pay any of said other liabilities when due said bank or the holder hereof, may thereupon or at any time or times thereafter sell the said property or any part thereof, and any substitute therefor or any additions thereto at any brokers' board or at public or private sale, without notice, advertisement or demand of any kind, and may apply the net proceeds after deducting the cost and expenses for collection, sale and delivery, to the payment of this note or of any or all of said liabilities, returning the residue to the undersigned on demand. Said bank or the holder hereof may purchase any of said property at any such brokers' board or public sale. In case of decline in the market value of said property or any part thereof, the holder hereof may demand the pledge and delivery of additional property of quantity and amount satisfactory to said holder; and the failure on the part of the undersigned to deliver such additional property on demand

shall cause this note to become due and payable on demand. In case of the insolvency of the undersigned, any indebtedness due from the holder hereof to the undersigned may be appropriated and applied hereon at any time, as well before as after the maturity hereof. The Majestic Tire & Rubber Co. D. M. Hoppe, Asst. Secy. & Treas."

Appellee was a corporation engaged in lending money. It had one transaction with the Majestic Company, out of which this suit arises. On August 11, 1922, the Majestic Company borrowed $2,000 from appellee, and, as collateral, handed appellee two documents. These documents were referred to as "warehouse receipts" at the trial. They are in the form of bills of lading, and appellant contends that, in any event, they are not negotiable warehouse receipts under the Uniform Warehouse Receipts Act, §§14490-14550 Burns 1926. Appellee held these documents as security for the loan. Before placing this loan, appellee consulted appellant concerning its method of handling loans to the Majestic Company, and then, adopting the same method, placed the loan. On August 16, 1922, the Majestic Company executed and delivered to appellee a "trust receipt" from the Majestic Company and signed by it, which, omitting caption, is as follows: "Received in Trust from Federal Securities Company receipts covering 400—30x3½ Majestic Tires, these being delivered to us to be immediately shipped as follows: 200 tires to be delivered to the Guarantee Tire & Rubber Company, Indianapolis, Indiana, 150 tires to be delivered to the New York Auto Parts, Indianapolis, Indiana, and 50 tires to be delivered to Tom Cann, Ltd., Leicester, England. The proceeds from the sale of these tires are to be paid to the Federal Securities Company, Indianapolis, Indiana, to apply against note in the amount of $2,000 plus interest. The Majestic Tire & Rubber Company."

Thereupon, appellee delivered to the Majestic Company said "warehouse receipts," and said Majestic Company released the tires from the warehouse and delivered them to the purchasers named in the trust receipt, and deposited the proceeds of the sale, amounting to slightly less than $2,840.25, in appellant bank on August 21 and 22, 1922. This was done without the knowledge or consent of appellee. The proceeds of the sale of the tires were in the form of checks or drafts payable to the Majestic Company. At the time they were deposited in appellant bank, there was nothing on the checks and nothing was said to indicate that the funds, or any part of them, belonged to anyone other than the Majestic Company. The Majestic Company, on August 21, 1922, drew a check for $2,020 to appellee. This procedure, except as to the deposit in bank, was in conformity with the understanding of appellee as to the transaction. The check was delivered about 4:45 p. m. of that day. Appellee deposited this check in the Indiana National Bank about noon the next day. The indorsement on the check shows that it was not cleared until August 23, 1922, and, on that date, appellant bank refused payment because of insufficient funds.

The Majestic Company was insolvent at all times after August 16, 1922. Appellant learned, about 3 o'clock in the afternoon of August 23, 1922, that the Majestic Company was insolvent and that a suit for a receiver of the Majestic Company was about to be filed. Appellant, at once, ordered the balance in the account of the Majestic Company applied upon the notes due from the Majestic Company to appellant. According to the practice of the Indianapolis Clearing House, appellant had until 4 o'clock in the afternoon to refuse payment on the check. The time when the clearing house closed for receipts for the day on August 23, 1922, was not proved, but an employee of appellant testified that

the latest he had known the clearing house to cease operations for receipts was 2 o'clock in the afternoon, and that checks were distributed by the clearing house from 30 to 45 minutes after they came in, and that he thought the check reached appellant bank about 1 o'clock in the afternoon of that day, but did not know this to be a fact; that checks were delivered from the clearing house in a large bundle, which had to be examined, and that the slip showing refusal of payment of the check to appellee was made out in the usual course of business on August 23, 1922.

The balance in the account of the Majestic Company was $2,524.47, which was, by the direction of the president of the bank, at the time of closing or just before, applied on the unmatured note above mentioned and described, which note was secured by other collateral. It is apparent from the evidence that, before this happened, in due course of business, the payment of appellee's check had been refused and it had been returned to the clearing house.

On August 25, 1922, at 10 a. m., appellee served on appellant a written demand, while the proceeds of said sale were yet on deposit in appellant bank, except for the credit aforesaid, setting forth its alleged interest in the balance applied by the bank, and demanding payment of the sum of $2,109, which appellant refused. Appellee then brought this suit.

On these facts, appellant contends that the judgment for appellee is not sustained by sufficient evidence, and is contrary to law.

There is no contention that setting aside (to appellee) the tires here involved, and storing them in a warehouse, and the issue and delivery of warehouse receipts therefor on August 11, 1922, whatever may have been their form, was not sufficient to constitute a delivery of the tires to appellee, whether as a pledgee,

or as a chattel-mortgagee. A more substantial question which we have to consider is as to the effect of the "trust receipt" delivered by the Majestic Company to appellee on August 16, 1922. Appellant contends that if such "trust receipt" were in the nature of a chattel mortgage, then, as it was not acknowledged or recorded, it was absolutely void, except as to the immediate parties thereto, and, if the tires were held by appellee under a pledge, then, when it surrendered possession thereof to the Majestic Company, it thereby lost its pledge lien thereon. The very essence of a pledge is, of course, delivery of the property pledged to, and the retention of the possession thereof, by the pledgee, but it has been repeatedly held that a delivery of the pledged property to the pledgor for a mere temporary purpose or special purpose does not, in legal contemplation, interrupt the possession of the pledgee. The court, in *New Albany Nat. Bank* v. *Brown* (1916), 63 Ind. App. 391, 400, 114 N. E. 486, held that: "It is well settled that the delivery by the pledgee to the pledgor for a mere temporary purpose, or a special purpose, does not, in legal contemplation, interrupt the pledgee's possession; and the fact that the policy [there involved] was turned over to the pledgor for a temporary or special purpose does not take away the possession from the pledgee any more than if the pledgee had turned the policy over to a stranger for the same purpose." To sustain this holding, the court quoted with approval from Jones, Pledges and Collateral Securities, §44, as follows: " 'A pledgee does not lose his lien by permitting the pledgor to have possession of the property for a special and limited purpose, and not merely for his own use and benefit.' " Again, quoting with approval from 31 Cyc. 818, as follows: " 'The delivery, however, of the property by the pledgee to the pledgor for merely a temporary or special purpose, as

for example for some temporary use, for the performance of some work on it, for sale, for lease for the pledgee's account, for pledge to another creditor of the pledgor, for collection, or to be exchanged for other property to be held in pledge, does not divest the pledgee's lien as against the pledgor or attaching creditors, although it would have that effect as against *bona fide* purchasers for value from the pledgor while in such temporary possession, without notice of the pledgee's right.' " The following authorities sustain this ruling: *Commercial Nat. Bank* v. *Canal-Louisiana, etc., Trust Co.* (1915), 239 U. S. 520, 36 Sup. Ct. 194, 60 L. Ed. 417, Ann. Cas. 1917E 25; *Kellogg* v. *Thompson* (1886), 142 Mass. 76, 6 N. E. 860; *Peters* v. *Pacific Guano Co.* (1890), 42 La. Ann. 690, 7 So. 790; *In Re Reeve's Estate* (1900), 111 Iowa 260, 82 N. W. 912; *Castle* v. *Hickman* (1895), 5 Cal. Unrep. 159, 41 Pac. 1036. The case of *Fletcher Amer. Nat. Bank* v. *McDermid, Rec.* (1920), 76 Ind. App. 150, 128 N. E. 685, so confidently relied upon by appellant, is readily distinguished from the instant case. In that case, there was a delivery by the pledgee to the pledgor, and such delivery was not for a limited or special purpose, but amounted to an unlimited and unrestricted surrender of the pledge, while here, as appears by the "trust receipt," the delivery was for the purpose only of sale to named persons, with the provision that the proceeds were to be returned to the pledgee. The circumstances here are altogether different from those in the McDermid case. Here, the transaction is in the nature of an agency, under which the Majestic Company, as the agent of appellee, undertook, as stated above, to sell and deliver the tires to the respective purchasers named in the "trust receipt," and to return the proceeds of the sale to appellee. If the delivery of the property, or, as in this case, the warehouse receipts, which were symbolical of the property, to the

pledgor should result in a subsequent negotiation to a purchaser in good faith and for value, a different question would be presented; but here it is averred, and the court by its general finding has so found, that, at the time of the attempted application of the deposit to the discharge of the Majestic Company's note, appellant had knowledge of appellee's equity, and that the note upon which the credit was made was of a past date and represented a past indebtedness. It appears by the evidence that the loan made by appellee to the Majestic Company was the only one made by it to that company, and that, before making it, appellee consulted the president of appellant bank as to its method of making and securing such loans, and then made the loan here involved. The check from the Majestic Company was signed by it, and payable to appellee, for the amount of the loan with interest, and, in due course of business, must have been received from the clearing house, payment refused, and returned to the clearing house during the afternoon of August 23, 1922, and before the application of the deposit to the note, at the time of closing the bank for the day, was made. From these facts, the court might reasonably infer that appellant had knowledge of appellee's equities at the time it made the application of the deposit to the payment of the pre-existing debt.

In *New Albany Nat. Bank* v. *Brown, supra,* the court stated that: "In Indiana, the rule has long since been established that a precedent debt does not constitute one a purchaser or holder for value." By the express terms of the "trust receipt," the Majestic Company agreed that: "The proceeds of the sale of these tires are to be paid to the Federal Securities Company, Indianapolis, Indiana, to apply against note in the amount of $2,000.00 plus interest." This, it did not do, but, in lieu thereof, it deposited the money to its account in appellant bank, and then issued its check for

the amount of the note and interest to appellee. There had been no course or custom of dealing between the parties theretofore that justified this method of procedure, for this was the first and only transaction between the parties, and the first information of such a course that appellee had was when it was given the check. It does not necessarily follow that the Majestic Company, or its officers and agents, by adopting the course which it did intended a breach of faith. The amount of the checks for the tires was in excess of the amount due appellee, and this course may have been adopted by the Majestic Company as a means of paying to appellee the exact amount due it, and retaining the balance of the sale price, but, in the light of its express contract to return the proceeds of the sale to appellee, its acts were wrongful, and, in the course of subsequent events, resulted to the prejudice of appellee. Had the proceeds of the sales been returned directly to appellee, this lawsuit would not have resulted. But it must be held that such wrongful deposit of the proceeds of the sales of the tires and the application thereof to the indebtedness of the Majestic Company did not create a superior equity in appellant that defeated appellee's right to the funds in the amount required to discharge its loan, and this, regardless of whether appellant knew of appellee's interest in the fund, for it clearly appears that appellant parted with nothing, nor took any step to its prejudice, on the faith of such fund. *Citizens Bank* v. *Harrison* (1891), 127 Ind. 128, 26 N. E. 683; *Peoples State Bank* v. *Kelly, Rec.* (1922), 78 Ind. App. 418, 136 N. E. 30; *Porter* v. *Roseman* (1905), 165 Ind. 255, 74 N. E. 1105, 112 Ann. St. 222, 6 Am. Cas. 718; *New Albany Nat. Bank* v. *Brown, supra; Agard* v. *Peoples National Bank* (1927), 169 Minn. 438, 211 N. W. 825, 50 A. L. R. 629. The last case cited is so illustrative of the principles here involved, and so convincing in its reasoning, that

we conclude to state its facts and holdings, and, for want of better expression, we adopt substantially appellee's statement thereof as it appears in its brief, as follows: Charles A. Lindbergh occasionally negotiated and sold farm lands. He left with a person in charge of his office at Little Falls, Minnesota, about $2,000 received by him in payment of a mortgage debt, and the plaintiff in that case had left with Lindbergh the note, mortgage and a satisfaction thereof executed by plaintiff in anticipation of such payment; the note, mortgage and satisfaction so left to be delivered to the mortgagor when the money was received. This money was remitted by the person with whom it was left by bank draft in favor of Lindbergh to Lindbergh's office in Minneapolis. Lindbergh was confined in a hospital at Rochester for an ailment from which he soon died. His Minneapolis office was in charge of one who knew that the money belonged to the plaintiff and she indorsed with Lindbergh's name the draft received from the office at Little Falls and deposited it in a Minneapolis bank for the credit of the defendant Peoples National Bank of Shakopee. Lindbergh had an account in the Shakopee bank and was forthwith credited with the amount of the draft. Lindbergh died and his estate was insolvent. The Shakopee bank attempted to appropriate the Lindbergh balance, including the plaintiff's money, on certain notes that it held against the deceased, all of them ante-dating the deposit. In substance, the court said that the bank did not change its position to its detriment on the faith of the deposit of plaintiff's money, so it had no equity superior to that of the plaintiff, there being no dominant quality in the banker's right of set-off. It was argued to the contrary upon the currency of negotiable paper and the ancient foundation that money had no earmarks and, therefore, when honestly taken can be kept, and the court, in answer, then quoted this lan-

guage: " 'Modern jurisprudence is assailing this rule. The truth is recognized that money has no more sacredness than other kinds of property, and that the true owner ought under many conditions to recover his own, especially when the receiver would not be in a worse state than he would have been had it not been paid to him.' " Citing Bolles, Banking 748.

The court held that, notwithstanding the fluidity of money, and the necessity therefor to maintain its status as money, a bank, unaided by superior equity, could not appropriate the money of another which happens by chance to have been placed temporarily in its control, using this language: "Here it (the bank meaning) was intended to be merely the conduit of that money on its way to the rightful owner. The final remittance was prevented, the record shows, because at the time being Mr. Lindbergh was incapacitated for business and remained so to the end.

"What has happened to plaintiff's right to his money? Nothing but the unilateral act of the bank in asserting a right of off-set. But no equity attends that right, at least none superior to that of plaintiff. The bank has not changed its position on the faith of the deposit. It certainly did not accept Lindbergh as a depositor, nor loan him money, nor buy his notes, expecting payment out of any funds not his own."

The court further held that currency of money, commercial paper and absence of earmarks, have never, alone, procured their escape from equity's pursuit of trust property in the hands of those who, with notice, or as volunteers, or without consideration, have taken the property from the trustee. Equity follows not only the original property but the proceeds of it if there has been a conversion into money, and the doctrine predicated upon the currency of money and the lack of ear-

marks also applies where the trustee himself converts or uses the money. Numerous authorities are cited.

The court further held that, notwithstanding the lack of knowledge on the part of the bank, it could not hold the fund in question. In that case, the fund was not wrongfully deposited in the account of Lindbergh. It was not deposited in his account in violation of any contract. Here, the proceeds of the sale of the tires were deposited in the account of the Majestic Tire & Rubber Company in appellant bank in violation of the terms of the so called "trust agreement" not, however, corruptly, and, like the bank in the Lindbergh case, appellant bank was made a mere conduit through which to transfer the funds of appellee, so received by the Majestic Company, as aforesaid, to appellee, the only purpose of the deposit in appellant's bank and the giving of the check being to transfer the fund to appellee, its owner.

The *Agard Case,* and the authorities preceding it, are so convincing as to the principles therein announced as, in effect, to be decisive of the substantial questions here involved, and so conclusive in favor of appellee's right of recovery, that we deem it unnecessary to consider the numerous other questions presented.

Judgment affirmed.